STATE OF NEBRASKA, APPELLEE, V. BOB PALSER, APPELLANT.
469 N.W.2d 753

Filed May 24, 1991.   No. 90-242.

Gary J. Krajewski, of McQuillan & Spady, P.C., for appellant.

Robert M. Spire, Attorney General, James H. Spears, and Barry Waid for appellee.

HASTINGS, C.J., WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ., and COLWELL, D.J., Retired.

COLWELL, D.J., Retired.
Defendant, Bob Palser, appeals his conviction for distribution of a controlled substance, cocaine, in violation of Neb. Rev. Stat. § 28-416(1)(a) (Cum. Supp. 1988), and his

sentence of 5 to 10 years' imprisonment. He assigns seven errors: (1) and (2), admitting into evidence the out-of-court written statement of John Armstrong (exhibit 1); (3), (4), and (5), failing to grant a mistrial for (a) statements made by witness Patrick Aufdengarten, (b) discovery of contact between the prosecuting attorney and one of the jurors, and (c) prosecutor misconduct during the trial; (6) failing to give defendant's requested instruction No. 13; and (7) imposing an excessive sentence. We affirm.

## FACTS

In 1988, the police arrested Patrick Aufdengarten for possession of cocaine. He thereafter became a cooperating police informant, advising the police that he could buy cocaine from John J. Armstrong, who worked at the Armstrong's station, located on the edge of Ogallala and owned by John's father. A controlled purchase was arranged for Aufdengarten to make a drug buy from John Armstrong.

On November 18, 1988, at about 6:30 p.m., Lt. Kent Bolejack, a Keith County Deputy Sheriff; Joshua I. Barton, police officer; and Aufdengarten met at the city dog pound. Aufdengarten was body searched for drugs and money, and he was given $120 to make a drug buy according to discussed plans. Barton drove to the Armstrong's station, where he conducted a surveillance from the east side of the station. He could not see the inside of the station. Aufdengarten and Bolejack drove to the station in a borrowed pickup. Aufdengarten entered the station, where he met Armstrong, who told him he had no drugs but Aufdengarten should return in about 45 minutes. Aufdengarten, Bolejack, and Barton returned to the dog pound, where they remained for about 1 hour, and then they returned to the station. Bolejack got out of the pickup, but he could not see into the station. Aufdengarten entered the station. Barton positioned himself in the parking lot on the west side of the station, where he had a view of the station business counter area as seen through the front of the store; he could see Armstrong and Aufdengarten. After some delay, Aufdengarten again contacted Armstrong to buy drugs. In about 20 minutes, Palser entered the station. Palser and

Armstrong went to a back room in the station, and shortly thereafter, Palser left the station. After about 20 minutes, Armstrong sold cocaine to Aufdengarten, which cocaine was later delivered to the officers. Aufdengarten, Bolejack, and Barton returned to the dog pound. Neither Aufdengarten, Bolejack, nor Barton saw any exchange of either money or drugs between Armstrong and Palser. At trial, the only evidence of such exchange is exhibit 1, dated December 22, 1988, which is the statement of John J. Armstrong, as follows:

Page 1 of 1

### VOLUNTARY STATEMENT
### (Not Under Arrest)

John J. Armstrong, am not under arrest for, nor am I being detained for any criminal offenses concerning the events I am about to make known to, Kent Bolejack J. Barton without being accused of or questioned about any criminal offenses regarding the facts I am about to state, I volunteer the following information of my own free will, for whatever purposes it may serve.

I am 28 years of age, and reside at 911 W. 8th Ogallala

---

I got the coke xxx[JA] [language crossed out and initialed] from Bob Palser the night Pat Aufdengarden bought it from me at Armstrongs. Pat, he told me he needed some for a birthday party Nov. 18 1988. So I got a hold of Bob, and got a gram [JA]xxxx xxx xx for Pat from Bob Palser. I [JA]xx told Pat before hand to come back to Armstrongs in fourty five min. or so. I call Bob Palser to get it. He brought it up himself, then xxxx[JA] I took it and sold it to Pat myself for $100.00 cash. I do not remx[JA]ember if I give the cash to Bob at that time or later. I did give Bob the money.

---

I have read each page of this statement consisting of 1 page(s), each page of which bears my signature, and corrections, if any, bear my initials, and I certify that the facts contained herein are true and correct.

Dated at 11:40 am/~~pm~~. Location KCSD this 22 day of Dec., 1988.
Witness /s/ K. Bolejack
Witness /s/ J. I. Barton OPD#5
　　　　　/s/ John J. Armstrong
　　　　　Signature of person giving statement
(Signatures and Armstrong's printed parts of statement emphasized.)

When the trial was commenced on September 20, 1989, John Armstrong was called as a State witness. He claimed fifth amendment protection, and pursuant to Neb. Rev. Stat. § 29-2011.02 (Reissue 1989), the court granted Armstrong immunity from prosecution. However, Armstrong continued to refuse to testify, and the court found him in contempt, remanded him to jail, and declared the trial in recess. The trial resumed on September 26, 1989, with a jury present. Armstrong was recalled as a witness; however, he could not recall any activity or conversation that occurred on November 18, 1988, and particularly could not recall either the contents, details, or execution on December 22, 1988, of exhibit 1.

Since the testimony of Armstrong indicated the possible prosecution use of exhibit 1 in the evidence, the court, on its own motion, conducted a *"Denno"*-type reliability hearing (jury not present) to test the reliability and trustworthiness of exhibit 1. See *State v. Roy*, 214 Neb. 204, 333 N.W.2d 398 (1983).

Officer Barton testified that on December 22, 1988, Armstrong voluntarily came to the sheriff's office, where he was interviewed for about 2 hours in the presence of the county attorney, Bolejack, Investigator Reddinger of the Nebraska State Patrol, and Barton. Armstrong was told what the officers knew of his participation in the drug buy and that Armstrong had the option of cooperating with the prosecuting authorities or a criminal complaint might be filed against him for that crime. The nature of being a cooperating witness was explained to him. Armstrong agreed to act as a cooperating witness, and he signed such an agreement. Thereafter, he composed and wrote the statement, now exhibit 1. Prior to making the statement, Armstrong was advised that he could have an

attorney present; however, he declined to do so. No threats or promises were made to Armstrong, and he was never held in custody. Lieutenant Bolejack testified that Armstrong prepared exhibit 1 in his own handwriting.

At the conclusion of the State's evidence in the reliability hearing, defendant's counsel asked leave to call Armstrong as a witness, which request was denied by the court's saying that Armstrong had previously testified he had no recollection of any of those events, that "you can cross examine him on the witness stand," and, after counsel argument, that "[h]e's out in the hall. He's here subject to a full and complete and absolute cross examination." Thereafter, the court found that the test of exhibit 1 for indicia of reliability had been met. Trial resumed with the jury present.

Witness Armstrong was recalled by the State, and he continued to deny signing the statement, exhibit 1. His examination of exhibit 1 did not refresh his recollection as to any events of November 18, 1988. He was not sure if either his signature or his initials appeared on the statement. However, on cross-examination, he testified that on December 22, 1988, he was called to the police station for a meeting with the county attorney and members of the State Patrol, county sheriff's office, and the city police, who told him he had sold cocaine to someone; that his request to contact an attorney was denied; that he was threatened by the officers that if he did not cooperate he would be sent to the penitentiary and his father would lose his business; that he was not allowed to contact anyone during the entire 4-hour interview (it ended about 11:40 a.m.); and that he was "scared and shook-up," and he "would have signed anything" they told him to sign.

Officer Barton was recalled and generally restated to the jury the circumstances surrounding Armstrong's interview and his execution of exhibit 1. In addition, he denied that Armstrong asked to call an attorney. Armstrong was made aware of the statutory forfeiture laws. Armstrong was not threatened with confinement; rather, the option of becoming a cooperating witness was more appealing than the obvious possible criminal prosecution. Armstrong made no request to contact anyone; however, he did receive one telephone call, but was not

permitted to answer it by one of the other officers present.

Over defendant's objection, exhibit 1 was offered and received into the evidence as an exception to the hearsay rule, as provided in Neb. Rev. Stat. § 27-804 (Reissue 1989):

(1) Unavailability as a witness includes situations in which the declarant:

. . . .

(b) Persists in refusing to testify concerning the subject matter of his statement despite an order of the judge to do so; or

(c) Testifies to lack of memory of the subject matter of his statement . . . .

. . . .

(2) Subject to the provisions of section 27-403, the following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

. . . .

(c) A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject him to civil or criminal liability or to render invalid a claim by him against another, that a reasonable man in his position would not have made the statement unless he believed it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement . . . .

The court ruled that from Armstrong's testimony, he was an unavailable witness, § 27-804(1)(b) and (c), and the statement, exhibit 1, was admissible as an exception to the hearsay rule, § 27-804(2)(c), because the statement was plainly against Armstrong's penal interests, since it tended to expose him to criminal liability and a "reasonable man in Armstrong's position would not have made the statement unless he believed it to be true."

## THE STATEMENT

The first and second errors are discussed together.

"[T]he mission of the confrontation clause is to advance

practical concern for the accuracy of the truth determination process in criminal trials by assuring that the trier of fact has a satisfactory basis for evaluating the truth of the prior statement." *State v. Roy*, 214 Neb. 204, 207, 333 N.W.2d 398, 401 (1983).

When hearsay statements admitted into evidence have sufficient indicia of reliability to afford the trier of fact a satisfactory basis for evaluating their truth, they do not violate the right of confrontation. The essential confrontation issues are whether the hearsay is, under all the circumstances, sufficiently reliable and trustworthy, and whether there is a demonstrated need for the evidence; the availability of cross-examination is simply one of the means by which the quality of reliability is tested. See *State v. Roy, supra*.

The primary interest secured by the confrontation clause is the right of cross-examination. *Ohio v. Roberts*, 448 U.S. 56, 100 S. Ct. 2531, 65 L. Ed. 2d 597 (1980). "The right to confront and cross-examine witnesses is primarily a functional right that promotes reliability in criminal trials." *Lee v. Illinois*, 476 U.S. 530, 540, 106 S. Ct. 2056, 90 L. Ed. 2d 514 (1986).

In *Ohio v. Roberts, supra* at 448 U.S. at 66, the Court said:

> In sum, when a hearsay declarant is not present for cross-examination at trial, the Confrontation Clause normally requires a showing that he is unavailable. Even then, his statement is admissible only if it bears adequate "indicia of reliability." Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness.

See, also, *Bourjaily v. United States*, 483 U.S. 171, 107 S. Ct. 2775, 97 L. Ed. 2d 144 (1987).

Here, the declarant, John Armstrong, was a witness at trial and subject to cross-examination; however, he was unavailable by virtue of his inability to recall the subject matter of the statement. See § 27-804(1)(c). Defendant admits that Armstrong qualifies as being unavailable.

The question presented is whether the State has carried its burden of proving that Armstrong's written statement bore

sufficient "indicia of reliability" to satisfy the requirements of the confrontation clause.

We agree that the statement was an exception to the hearsay rule. However, under the conflicting evidence here, there is no inference of reliability, and to meet the constitutional confrontation clause reliability standards the statement must possess some "particularized guarantees of trustworthiness." See *Olson v. Green*, 668 F.2d 421 (8th Cir. 1982). The U.S. Supreme Court has declined to endorse a mechanical test for particularized guarantees; rather, they "must be drawn from the totality of the circumstances that surround the making of the statement and that render the declarant particularly worthy of belief." *Idaho v. Wright*, ____ U.S. ____, 110 S. Ct. 3139, 3149, 111 L. Ed. 2d 638 (1990).

Defendant relies heavily on *U.S. v. Boyce*, 849 F.2d 833 (3d Cir. 1988), where the statement of a third-party codefendant, John McMahon, was held to be invalid when offered to inculpate Boyce, because the context of the statement indicated that it was unreliable. That case can be distinguished. McMahon gave his statement to an FBI agent and a police officer while he was in custody and before he had benefit of counsel. The only surrounding circumstance in the record concerning his arrest, confinement, and presigning interrogation was that he had been advised of his constitutional rights. The court also noted that there was no showing that the statement was not motivated by a desire to create favor. See *United States v. Palumbo*, 639 F.2d 123 (3d Cir. 1981).

Here, Armstrong voluntarily reported to the sheriff's office and participated in a conference with known official criminal law investigators; he was not in custody; after the purposes of the interview were made known, he was informed of the evidence against him, including the corroborating evidence from the drug buyer, Aufdengarten, relating to the drug buy, and he was given the option of cooperating as a witness or the obvious duty of the prosecuting attorney to file charges against him; he elected to become a cooperating witness and signed such an agreement; and he then composed the statement that openly admits his part in the crime, without attempting to place the blame on some other person. Witness Barton testified that

he saw Aufdengarten and Armstrong together in the station. Officers Bolejack and Barton testified that the statement was freely made and executed by Armstrong, absent any threats or force.

Defendant suggests that the officers' statements to Armstrong that he would be sent to the penitentiary and his father would lose his business were threats and coercion. It is public knowledge that a possible penalty for a convicted drug felon is to be incarcerated in the penitentiary and that there are State forfeiture laws. Bringing that knowledge to Armstrong's attention, along with knowledge of the evidence against him, may have been a useful interrogation tool, but it was neither a threat to nor coercion of Armstrong under the circumstances.

From the record these particular circumstances show that the statement, exhibit 1, was reliable, trustworthy, and worthy of belief and that defendant's right of confrontation was not violated.

## MISTRIAL MOTIONS

A mistrial is properly granted only when an event occurs during the course of a trial which is of such a nature that its damaging effects cannot be removed by proper admonition or instruction to the jury and would thus result in preventing a fair trial. *State v. Andersen*, 232 Neb. 187, 440 N.W.2d 203 (1989).

The decision to grant a motion for mistrial is within the discretion of the trial court and will be upheld on appeal absent a showing of abuse of discretion. Ordinarily, when an objection to or motion to strike improper evidence is sustained and the jury is instructed to disregard it, such instruction is deemed sufficient to prevent prejudice. The test is this: Did the remark which the jury was instructed to disregard, when viewed against the backdrop of all the evidence, so taint the entire proceedings that the accused did not have a fair trial? See *State v. Jones*, 232 Neb. 576, 441 N.W.2d 605 (1989).

*Witness Statements.*

The first motion relates to the testimony of the first witness, Aufdengarten, a State cooperating witness, as follows:

Q Do you remember what time you got to Armstrong's . . . for the first time on the evening of November 18th,

1988?

Q A I don't really want to answer these questions because I've received threats against me and my family.

Q Would you mind telling me what kind of threats you've received?

Defendant's objection to the last question was sustained and was followed by a motion to strike from the record; however, no ruling was made on the motion. Defendant made no request to admonish the jury. Later, Aufdengarten refused to answer a question, and when directed to answer, he said, "Can't do that, Your Honor. Things that have happened in the last month." No objection was made to that statement; however, the court promptly declared a recess and conducted an in camera hearing concerning the claimed threats to the witness and to his family, none of which were shown to be attributed to defendant. When trial was resumed, the jury was admonished by the court to disregard Aufdengarten's testimony about any threats to either himself or his family. Aufdengarten was temporarily excused, subject to recall.

After reviewing the testimony, the court's in camera hearing, and the court's admonition to the jury, we determine that there is no showing that any prejudicial effects remained. The court did not abuse its discretion in denying a subsequent motion for mistrial.

*Juror Misconduct.*

The next motion for mistrial alleged prosecutor misconduct relating to a conversation between the prosecutor and a juror while both were attending a regular meeting of the local Optimist Club. The prosecutor reported that conversation to the trial judge immediately. The juror was examined with counsel present, outside the presence of the jury, to determine if defendant's right to a fair trial had been violated. See *State v. Polinski*, 230 Neb. 43, 429 N.W.2d 725 (1988). The evidence revealed a brief exchange between the juror and the prosecutor about a future club program. The juror testified that the incident would not affect his ability to continue serving as an impartial juror. Although the better professional conduct of the prosecutor would have been served by avoiding all contacts

with jurors, the denial of the motion did not deprive defendant of either an impartial jury or a fair trial, and there was no error.

*Prosecutor Misconduct.*

Lastly, defendant's third motion for mistrial alleged prosecutor misconduct when propounding the following questions to Officer Barton: "Q Did Mr. Aufdengarten say anything to you while you were examining this particular item?" Defendant's hearsay objection was sustained for relevancy. "Q . . . Officer Barton, did Mr. Aufdengarten say anything to you regarding what happened at Armstrong's during the second visit?" Defendant's objection was sustained. "Q . . . Officer Barton, did Mr. Aufdengarten tell you that he was present when Mr. Armstrong gave Mr. Palser the $100 that you had given him?" Again, defendant's objection was sustained. Defendant did not move to either strike the questions or admonish the jury. However, the court was asked to admonish the prosecutor, and the court did so, saying, "You don't need to go any further Mr. Erickson. That line of questioning will cease." Defendant's motion for a mistrial was denied, and the examination of the witness continued.

In the absence of a request to admonish the jury to disregard the three questions and of any showing that the questions were so damaging that a fair trial was impossible, there was no abuse of discretion in denying the motion. See *State v. Eary*, 235 Neb. 254, 454 N.W.2d 685 (1990).

## JURY INSTRUCTION

It is the duty of the trial court, upon request of the accused, to instruct the jury upon any valid defense if there is credible evidence to support it. *State v. Marco*, 230 Neb. 355, 432 N.W.2d 1 (1988).

At the court's instruction conference, the judge refused to give defendant's requested instruction No. 13, which stated in part: "No conviction of guilt shall be based solely upon the uncorroborated testimony of a cooperating individual."

Defendant's claim is based on Neb. Rev. Stat. § 28-1439.01 (Reissue 1989), "No conviction for an offense punishable under sections 28-401 to 28-438 shall be based solely upon the uncorroborated testimony of a cooperating individual." The

rule is that it is sufficient if the cooperating individual is corroborated as to material facts and circumstances which tend to support the testimony as to the principal fact in issue. See *State v. Cain*, 223 Neb. 796, 393 N.W.2d 727 (1986).

"The corroboration required by . . . § 28-1439.01 . . . may be supplied by observation that the meeting between the subject and the cooperating individual actually took place and by searches of the cooperating individual both before and within a reasonable time after the drug purchase took place." (Syllabus of the court.) *State v. Knoefler*, 227 Neb. 410, 418 N.W.2d 217 (1988).

Here, there was independent evidence that cooperating witness, Aufdengarten, was bodily searched three times for drugs and money; he was observed by an investigating officer while Aufdengarten met with Armstrong, and the witness later delivered cocaine to the officers. That evidence sufficiently corroborated Aufdengarten's testimony, making § 28-1439.01 inapplicable, and the issue of credibility was for the jury, as guided by all of the court's instructions. See *State v. Knoefler, supra*. The tendered instruction No. 13 was properly refused.

## EXCESSIVE SENTENCE

Other than the assignment of error, defendant's brief fails to discuss any reasons supporting this claimed error except that from the presentence report he claims "it is readily apparent the court abused its discretion." Brief for appellant at 22. We can only assume that reference is made to these facts: Defendant, age 36 years, is married, living with his wife and family in Ogallala. He works for a bean company and is a self-employed fishing guide. He neither admitted nor denied personal drug usage; he has no prior criminal record; and the investigating probation officer indicated defendant was cooperative and would probably successfully complete a probation program. A sentence imposed within the statutory limit will not be disturbed on appeal in the absence of an abuse of discretion on the part of the trial court. *State v. Kitt*, 231 Neb. 52, 434 N.W.2d 543 (1989). The crime charged here had a maximum penalty of 50 years and a minimum of 1 year. The sentence imposed was within the statutory limits.

From our reading of the presentence report and the record, we conclude there was neither error nor an abuse of discretion in the sentence imposed.

AFFIRMED.