STATE OF NEBRASKA, APPELLEE, V. DARREN LEE MYERS,
APPELLANT.
510 N.W.2d 58

Filed January 14, 1994.   No. S-92-1195.

Arthur R. Langvardt for appellant.

Don Stenberg, Attorney General, and Donald A. Kohtz for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, FAHRNBRUCH, and LANPHIER, JJ.

FAHRNBRUCH, J.

Because it was plain error to omit the element of "malice" from the jury instructions defining second degree murder and to omit from the jury instructions that the kinds of homicides instructed upon were felonies, Darren Lee Myers' convictions of second degree murder and use of a firearm to commit a felony are reversed, and he is granted a new trial.

Myers was charged by information with first degree murder and use of a firearm to commit a felony. A jury in the district court for Adams County rejected Myers' self-defense claim and convicted him of second degree murder in the January 24, 1992, shooting death of Kervin Thomas. The jury also convicted Myers of use of a firearm to commit a felony. Myers was sentenced to life imprisonment for the homicide conviction and 5 to 15 years' imprisonment for the firearm conviction, the sentences to run concurrently.

Restated, Myers' complaints on appeal are that (1) the trial court erred in instructing the jury, (2) prosecutorial misconduct denied him a fair trial, (3) his sentence is excessive, and (4) the trial court erred in overruling his motion for a new trial.

## JURY INSTRUCTIONS

Myers complains that although he had been charged with use of a firearm to commit a felony, the jury was not instructed that any of the other offenses submitted to the jury were, in fact, felonies. He also contends that the jury was improperly instructed on self-defense.

Before reviewing Myers' assignments of error, we note that the trial court omitted the element of malice from its instruction on second degree murder. Although Myers made no objection to that instruction, we find that omission to be plain error and elect to review that issue first.

### SECOND DEGREE MURDER INSTRUCTION

We are not unmindful that ordinarily, to be considered by an appellate court, errors must be assigned and discussed in the brief of the one claiming that prejudicial error has occurred. See, Neb. Ct. R. of Prac. 9D(1)d (rev. 1992); *State v. Vermuele*, 241 Neb. 923, 492 N.W.2d 24 (1992). Although an appellate court does not consider assignments of error not listed and

discussed in the briefs, it always reserves the right to note plain error which was not complained of at trial or on appeal but is plainly evident from the record, and which is of such a nature that to leave it uncorrected would result in damage to the integrity, reputation, or fairness of the judicial process. *Design Data Corp. v. Maryland Cas. Co.*, 243 Neb. 945, 503 N.W.2d 552 (1993). See, also, Neb. Rev. Stat. § 25-1919 (Cum. Supp. 1992).

In Myers' case, the court was correct in instructing the jury on the three kinds of homicide, that is, first degree murder and second degree murder, and manslaughter. See *State v. Morrow*, 237 Neb. 653, 467 N.W.2d 63 (1991) (holding that when murder is charged, the court is required to charge on such lesser degrees of homicide as to which the evidence is properly applicable). The record shows that, in its second degree murder instruction, the trial court neither included nor defined "malice" as an element of second degree murder.

Prior to the adoption of the current criminal code in 1977, the second degree murder statute defined such a killing as one done "purposely and maliciously." Neb. Rev. Stat. § 28-402 (Reissue 1975). The current code states that "[a] person commits murder in the second degree if he causes the death of a person intentionally, but without premeditation." Neb. Rev. Stat. § 28-304 (Reissue 1989). It does not mention malice.

However, this court has continued to require malice as an element of second degree murder. Section 28-304 became effective on January 1, 1979. See, 1977 Neb. Laws, L.B. 38, § 19; 1978 Neb. Laws, L.B. 748, § 54. In *State v. Rowe*, 214 Neb. 685, 335 N.W.2d 309 (1983), this court affirmed the defendant's second degree murder conviction for the May 1, 1980, slaying of his wife. Although the crime in *Rowe* occurred after the effective date of the new statute, this court held that the essential elements in the crime of murder in the second degree are that the killing be done purposely and maliciously. "Purposely" means "intentionally." *State v. Thompson, ante* p. 375, 507 N.W.2d 253 (1993); *State v. Williams*, 243 Neb. 959, 503 N.W.2d 561 (1993).

In our recent opinions, we have continued to declare that malice is an element of second degree murder. See, e.g., *State v.*

*Franklin*, 241 Neb. 579, 489 N.W.2d 552 (1992); *State v. Dean*, 237 Neb. 65, 464 N.W.2d 782 (1991). But see *State v. Williams*, 226 Neb. 647, 413 N.W.2d 907 (1987), *cert. denied* ____ U.S. ____, 113 S. Ct. 260, 121 L. Ed. 2d 191 (1992) (omitting mention of malice as element of second degree murder, but only issue on appeal was whether evidence was sufficient to support conviction for intentional killing rather than defendant's claim of self-defense).

It is the duty of the trial judge to instruct the jury on the pertinent law of the case, whether requested to do so or not, and an instruction or instructions which by the omission of certain elements has the effect of withdrawing from the jury an essential issue or element in the case is prejudicially erroneous. *State v. Breaker*, 178 Neb. 887, 136 N.W.2d 161 (1965).

By omitting the element of malice from the second degree murder instruction, the instruction in effect became one for the crime of intentional manslaughter as defined by this court in *State v. Pettit*, 233 Neb. 436, 445 N.W.2d 890 (1989). Malice is not an essential element of manslaughter. "A person commits manslaughter if he kills another *without malice*, either upon a sudden quarrel, *or* causes the death of another unintentionally while in the commission of an unlawful act." (Emphasis supplied.) Neb. Rev. Stat. § 28-305(1) (Reissue 1989).

The omission in the instructions on second degree murder of malice as an element of that crime was prejudicially erroneous and constituted plain error, thereby entitling Myers to reversal of his convictions and a new trial.

## INSTRUCTION ON FELONIES

Myers also complains that, although he had been charged with use of a firearm to commit a felony, the jury was not instructed that any of the other offenses submitted to the jury were, in fact, felonies. As previously noted, the jury was instructed on first degree murder, second degree murder, and manslaughter.

The record reflects that the court gave two instructions on the firearm charge, one in the language of the statute, Neb. Rev. Stat. § 28-1205(1) (Reissue 1989), and one setting forth the elements of the offense, the burden of proof, and the standard

of proof. The defense made no objection to either instruction at the instruction conference, even though the trial court had omitted setting forth that each of the homicide charges upon which it had previously instructed were felonies. Nor did the defense request or submit a proposed instruction that first degree murder, second degree murder, and manslaughter were felonies for the purpose of the firearm charge.

Failure to object to a jury instruction after it has been submitted to counsel for review precludes raising an objection on appeal absent plain error indicative of a probable miscarriage of justice. *State v. Drinkwalter*, 242 Neb. 40, 493 N.W.2d 319 (1992). A party who does not request a desired jury instruction cannot complain on appeal about incomplete instructions. See *State v. Huffman*, 222 Neb. 512, 385 N.W.2d 85 (1986).

On the other hand, we held in *State v. Bridger*, 223 Neb. 250, 256, 388 N.W.2d 831, 835 (1986), that "[when] a trial court fails, *after specific request by the defendant*, to define a word which makes up an essential element of the crime charged, such failure is prejudicial error requiring reversal." (Emphasis supplied.) The case implies that the trial court is not required to define such terms if a definition is not requested by the defendant *and* the term has such a generally understood and accepted meaning that no instruction is necessary.

Myers argues that although the court and the attorneys knew that first and second degree murder and manslaughter were all felonies, the jury could not be presumed to know this. The word "felony" is a legal term of art and applies to numerous charges which cannot be said to have a generally understood and accepted meaning to the public at large. We agree with Myers that, in the absence of a definition of "felony," the jury was left to speculate as to an essential element of the firearm charge.

Once more exercising our prerogative to review the record for plain error, we again note that it is the duty of the trial judge to instruct the jury on the pertinent law of the case, *whether requested to do so or not*, and an instruction which by the omission of certain elements has the effect of withdrawing from the jury an essential issue or element in the case is prejudicially

erroneous. *State v. Breaker*, 178 Neb. 887, 136 N.W.2d 161 (1965).

Whether the crimes upon which the jury was instructed are felonies for the purpose of the firearm charge is part of the pertinent law of Myers' case. The trial court's failure to instruct the jury on that essential element of the case was prejudicially erroneous. This is plain error indicative of a probable miscarriage of justice and entitles Myers to reversal of his use of a firearm conviction and a new trial.

## SELF-DEFENSE INSTRUCTIONS

We next turn to Myers' claim that the jury was improperly instructed on self-defense. At the jury instruction conference, the defense objected to jury instruction No. 15 on self-defense. That instruction stated that "[t]he defendant did not act in self defense if the state proved beyond a reasonable doubt that any one of the following did not occur: (1) Kervin Thomas threatened or attempted to cause death or serious bodily harm . . . ."

Myers submitted his proposed jury instruction No. 1, which stated that "the Defendant did not act in self-defense if the State proved beyond a reasonable doubt that any one of the following did not occur: [1] Kervin Thomas *attacked* Defendant *or* threatened Defendant with death or serious bodily harm . . . ." (Emphasis supplied.) The court overruled Myers' objection to instruction No. 15 and refused Myers' proposed instruction No. 1.

Myers' proposed instruction also defined deadly force as "force used with the intent to cause death or serious bodily harm or force used with the knowledge that its use would create a substantial risk of death or serious bodily harm." Otherwise, the instruction given and the proposed instruction were virtually the same. Both were based on the model jury instruction set forth in NJI2d Crim. 7.3, except for the proposed instruction's definition of deadly force, which was excerpted from NJI2d Crim. 7.2.

To establish reversible error from a court's refusal to give a requested instruction, an appellant has the burden to show that (1) the tendered instruction is a correct statement of the law, (2)

the tendered instruction is warranted by the evidence, and (3) the appellant was prejudiced by the court's refusal to give the tendered instruction. *State v. Lowe, ante* p. 173, 505 N.W.2d 662 (1993).

If the jury instructions, when read together, correctly state the law, are not misleading, and adequately state the issues, there is no prejudicial error. *Id.*; *State v. Van Ackeren,* 242 Neb. 479, 495 N.W.2d 630 (1993).

Myers argues that the necessity for the use of deadly force in self-defense is determined by a subjective standard, that is, whether Myers himself believed deadly force to be necessary at the time in question. He contends that instruction No. 15 permitted the jury to find that he did not act in self-defense only if the jury did not believe that the victim was *in fact* attempting to kill or seriously harm Myers.

The law on self-defense in this state is clear. A defendant asserting self-defense as justification for the use of force must have a reasonable and good faith belief in the necessity of such force. *State v. Thompson, ante* p. 375, 507 N.W.2d 253 (1993). A defendant's claim of self-defense is a question of fact for the jury. *Id.* Thus, the question of whether a defendant has a reasonable and good faith belief in the necessity to use force is a question of fact to be determined by a jury and is not to be determined solely by the defendant's own subjective belief in the necessity to use force.

The law permits the use of deadly force only when the actor "believes that such force is necessary to protect himself against death, serious bodily harm, kidnapping or sexual intercourse compelled by force or threat." Neb. Rev. Stat. § 28-1409(4) (Reissue 1989). Myers' tendered instruction No. 1 is an incorrect statement of the law because it states in effect that the use of deadly force by Myers was justified if Thomas merely *attacked* Myers without regard to whether Thomas was threatening or attempting to cause death or serious bodily harm to Myers. The trial court correctly refused the proposed instruction.

Moreover, the instruction as given correctly states the law. This assignment of error is without merit.

## PROSECUTORIAL MISCONDUCT

Myers alleges that he was denied a fair trial because of prosecutorial misconduct, in that the prosecutor (1) persistently and repeatedly put before the jury evidence of irrelevant and nonprobative evidence of drug use and drug dealing by Myers; (2) commented in questioning witnesses and in closing argument upon Myers' declining to give a statement to law enforcement authorities following his arrest; (3) stated his personal belief in Myers' guilt during closing argument; and (4) put to Myers a series of questions during cross-examination implying specific factual knowledge on the prosecutor's part which was in direct contradiction to Myers' testimony, knowing that he could not support the accusations implied in such questions with evidence. We consider each of Myers' allegations in turn.

### EVIDENCE OF DRUG USE AND DRUG DEALING

Myers argues in his brief that the prosecutor repeatedly attempted to inject evidence of drug use and drug dealing into the trial without any evidence that such activities were connected to the crime in question. Four witnesses testified in regard to drug use or drug dealing by Myers, Thomas, and other persons. The record reflects that of those four witnesses, three were allowed to testify without objection by Myers.

It is a well-settled rule that if a party does not make a timely objection to the receipt of evidence at trial, the party waives the right on appeal to assert prejudicial error in the reception of such evidence. See, *State v. Schrein, ante* p. 136, 504 N.W.2d 827 (1993); *State v. Coleman*, 241 Neb. 731, 490 N.W.2d 222 (1992). "A litigant is not entitled to silently allow the opposing party to produce evidence and then, upon entry of an adverse verdict, 'wander among the Nebraska Evidence Rules' on appeal, in hopes of obtaining a reversal." *State v. Cave*, 240 Neb. 783, 793, 484 N.W.2d 458, 466 (1992).

By failing to object to the testimony of three witnesses who testified regarding drug use and drug dealing by himself, Thomas, and other parties, Myers waived the right to assert prejudicial error in the reception of their testimony.

During a fourth witness' similar testimony about drug use

and drug dealing, defense counsel objected that such testimony lacked foundation, relevance, and probative value. The trial court overruled the objections and allowed the testimony. Later, at defense counsel's request, the witness' testimony about drug transactions was stricken from the record and the jury was instructed to disregard the testimony.

Ordinarily, when an objection to or motion to strike improper evidence is sustained and the jury is instructed to disregard it, such instruction is deemed sufficient to prevent prejudice. *State v. Palser*, 238 Neb. 193, 469 N.W.2d 753 (1991). The test to determine whether an instruction to disregard improper evidence is sufficient to prevent prejudice to the defendant is whether the remark which the jury was instructed to disregard, when viewed against the backdrop of all the evidence, so tainted the entire proceedings that the accused did not have a fair trial. *Id.*

In view of the fact that three other witnesses were allowed to testify about drug use and drug dealing without objection, any testimony to these same facts by a fourth witness would not have tainted the proceeding or prevented Myers from having a fair trial in any way. Therefore, the trial court's instruction to disregard the testimony was sufficient to prevent any prejudice to Myers.

### COMMENTS ON MYERS' DECLINING TO MAKE STATEMENT

Myers argues that the prosecution impermissibly violated his Fifth Amendment right to remain silent by eliciting testimony about his lack of explanation of the killing and by commenting on the same during closing argument. This argument is directed at three separate occurrences. The first occurrence was after a deputy sheriff had testified that Myers had said a trace metal test on his hands was not necessary because he had shot Thomas. The prosecutor asked, "When Mr. Myers made that statement in response to your request, did he offer any explanation or excuse for the action he had taken?" The deputy answered, "None." The defense made no objection to this question and answer.

The second occurrence was during the State's cross-examination of Myers. The prosecutor asked, "Did you

show the sheriff any marks on your neck from [Thomas] grabbing you by the neck?" Myers replied, "No, I didn't talk to anybody when I came in." Although Myers' answer following the word "no" is unresponsive to the question asked, there was no objection by defense counsel or motion to strike Myers' voluntary statement that he had not talked to anybody.

Finally, during closing argument, the prosecutor stated:

[I]f a guy was claiming—if he were claiming that he shot a guy because he was defending himself from him, wouldn't he have said, "Look at the marks on my neck," or, "He was trying to get me," or, "Look at this, look what he did," or, "He was trying to knock me down." He didn't say that. He just said, "Why brother [sic] [with the trace metal test], I shot him." Now, you know, he's explained later what he says happened, but why didn't he explain that to the officer on the scene when he was first in custody in the sheriff's office?

The defense made no objections to these statements.

"[T]he due process clause of the 14th amendment forbids prosecutors from using a defendant's postarrest, post-*Miranda* silence for impeachment purposes." *State v. Lofquest*, 227 Neb. 567, 568, 418 N.W.2d 595, 596 (1988), citing *Doyle v. Ohio*, 426 U.S. 610, 96 S. Ct. 2240, 49 L. Ed. 2d 91 (1976). It is clear from the record that the above testimony and comments about Myers' lack of explanation for the killing were in reference to a postarrest, post-*Miranda* timeframe. However, the crucial difference between *Lofquest* and the present case is the fact that the testimony and comments in *Lofquest* were objected to, while those in Myers' case were not.

Myers' brief and defense counsel's comments at oral argument indicate that the failure to object was a matter of trial strategy in at least some of the above instances. One may not waive an error, gamble on a favorable result, and, upon obtaining an unfavorable result, assert the previously waived error. *Wolfe v. Abraham, ante* p. 337, 506 N.W.2d 692 (1993).

Because all of the statements of which Myers now complains were not objected to at the time of trial, at least in part due to a consciously chosen trial strategy, Myers waived error in regard to the statements. We decline to further review this assignment of error.

PERSONAL BELIEF IN MYERS' GUILT

Myers also complains that, during closing and rebuttal arguments, the prosecutor expressed his personal belief that Myers had not killed Thomas in self-defense and that Myers was guilty of deliberately killing Thomas.

The record reflects that the comments of the prosecutor in his initial closing argument were as follows: "But he had an opportunity to avoid that situation, that is Myers did, and he didn't do it. He shot the man. *I think he shot him in cold blood. And I think you must find him guilty.*" (Emphasis supplied.)

Myers also claims the following comments by the prosecutor in his rebuttal argument were objectionable:

Now this is a difficult decision. It's before you now. *I do not think he acted in self defense. My conclusion is that he deliberately killed this man. . . .*

We're not trying David Jones [a witness who was present at the scene of the killing], *we're not determining* whether he - what he did or didn't do that night. *We've got to decide* whether what he told the officers and what he told you is supported by their conclusions. *I believe it was. And I believe that Darren Myers killed Kervin Thomas that evening, and it was not required for his self-defense, and that therefore you must find him guilty.*

(Emphasis supplied.)

There was no objection to the prosecutor's statements by the defense, nor was there a motion for mistrial. Myers first complained of the prosecutor's conduct in his appeal to this court.

It is highly improper and generally prejudicial for a prosecuting attorney in a criminal case to declare to the jury his personal belief in the guilt of a defendant, unless such belief is given as a deduction from evidence. *State v. Leonard,* 196 Neb. 731, 246 N.W.2d 68 (1976); *State v. Brooks,* 189 Neb. 592, 204 N.W.2d 86 (1973). If we were to review the prosecutor's comments, we might well find them objectionable. However, any objection to the prosecutor's arguments made after the jury has been instructed and has retired is untimely and will not be reviewed on appeal. *State v. Hernandez,* 242 Neb. 78, 493 N.W.2d 181 (1992); *State v. Garza,* 241 Neb. 934, 492 N.W.2d

32 (1992). Because Myers failed to timely object to the prosecutor's closing remarks, his complaint in this court on that subject will not be reviewed.

### IMPROPER CROSS-EXAMINATION

Near the end of the State's cross-examination of Myers, the prosecutor asked Myers a series of questions which were apparently for the purpose of impeaching Myers' testimony that he had not talked to Thomas from October 1991 to the time of the killing in January 1992. Specifically, the State inquired as to whether Thomas had accompanied Myers in Myers' pickup truck to a certain woman's basement apartment a week or two before the killing. Myers denied riding anywhere with Thomas in the week or two preceding the killing. He further denied going to the woman's apartment or even being acquainted with the woman in question.

The defense made no objection to the line of questioning at the time. After the State put on no rebuttal evidence, Myers requested that the jury be instructed to disregard the questions because the State had failed to put on evidence that the meeting in the basement apartment had ever taken place in order to complete its impeachment of Myers. The court immediately instructed the jury to disregard the testimony on that issue entirely, as requested by the defense.

Such cross-examination is clearly improper. See *State v. Jackson*, 217 Neb. 363, 348 N.W.2d 876 (1984) (holding that an interrogator may not inquire of witness, "Isn't it true that you told X that you saw Y shoot Z?" leaving the impression that such was the case, and then not call X to establish that fact). The record reflects that the improper cross-examination was extremely brief, and when viewed against the backdrop of all the evidence, it did not taint the proceeding to the extent that Myers did not have a fair trial. The limiting instruction was sufficient to prevent any prejudice to Myers.

### MOTION FOR NEW TRIAL

It is not necessary for us to reach the issue of whether the trial court properly overruled Myers' motion for new trial, inasmuch as we have already determined that Myers is entitled to a new trial.

## EXCESSIVENESS OF SENTENCE

Finally, we turn to Myers' argument that his sentence is excessive and constitutes an abuse of judicial discretion.

Since we vacate Myers' judgments of conviction, this issue is also moot. However, because we are remanding the cause to the district court for retrial, we point out that the trial court committed plain error in its sentencing of Myers on the use of a firearm to commit a felony.

The trial court sentenced Myers to serve his firearm sentence *concurrently* with his life sentence for second degree murder. Section 28-1205(3) states, "[Using a firearm to commit a felony] shall be treated as a separate and distinct offense from the felony being committed, and sentences imposed under the provisions of this section shall be *consecutive* to any other sentence imposed." (Emphasis supplied.)

Under the terms of § 28-1205(3), it was plain error for the trial court to order Myers' firearm sentence to run concurrently with his life sentence.

## CONCLUSION

There being plain error prejudicial to the defendant in the jury instructions on second degree murder and also in the jury instructions on use of a firearm to commit a felony, Myers' convictions are reversed, and the cause is remanded to the district court for a new trial.

REVERSED AND REMANDED FOR A NEW TRIAL.

SHANAHAN, J., not participating.