STATE OF NEBRASKA, APPELLEE, V. GREGORY T. NEUJAHR,
APPELLANT.

540 N.W.2d 566

Filed December 8, 1995.   No. S-94-663.

Bruce E. Stephens for appellant.

Don Stenberg, Attorney General, and Joseph P. Loudon for appellee.

WHITE, C.J., CAPORALE, FAHRNBRUCH, LANPHIER, WRIGHT, CONNOLLY, and GERRARD, JJ.

CONNOLLY, J.

We have granted the State's petition for further review pursuant to Neb. Rev. Stat. § 24-1107 (Cum. Supp. 1994). The State appeals the Court of Appeals' decision reversing and remanding for new trial the conviction by jury of Gregory T. Neujahr for knowingly or intentionally possessing a controlled substance in violation of Neb. Rev. Stat. § 28-416(3) (Cum. Supp. 1992). The Court of Appeals found the trial court erred in not properly instructing the jury regarding Neujahr's claim that he did not know the pills in his pocket were a controlled substance and in admitting certain hearsay testimony. *State v. Neujahr*, 95 NCA No. 20, case No. A-94-663 (not designated for permanent publication). For the reasons cited below, we reverse the decision of the Court of Appeals and remand the cause to that court with direction that it reinstate the jury's verdict.

## STATE'S ASSIGNMENTS OF ERROR
## ON FURTHER REVIEW

The State alleges the Court of Appeals erred in finding that the trial court erroneously (1) admitted into evidence certain inadmissible hearsay and (2) instructed the jury regarding Neujahr's claim that he did not know the pills in his pocket were a controlled substance.

## BACKGROUND

On August 24, 1993, at approximately 11:50 p.m., Deputy Alan Kosmicki of the York County Sheriff's Department was dispatched to Pam Johnson's residence in Gresham, Nebraska. Upon arrival, Deputy Kosmicki discovered that Gregory T. Neujahr, an acquaintance of Johnson's, was creating a disturbance at the residence. As a result, Deputy Kosmicki arrested Neujahr for trespassing and disturbing the peace and took him to jail in York, Nebraska. While Neujahr was being booked into jail, his pants pockets were emptied, and six pills, along with the fragments of another, were found in a cellophane wrapper. Laboratory tests established that three of the pills were clorazepate, a tranquilizer described as a Schedule IV drug pursuant to Neb. Rev. Stat. § 28-405 (Cum. Supp. 1992).

At trial, Neujahr admitted that he had the pills on his person. His defense was that he did not know what the pills were. He testified that Audrey Jean Nisula, an acquaintance of both Neujahr and Johnson, accidentally dropped the pills in his vehicle and that he picked them up, placed them in a cellophane cigarette wrapper, and put them in his pocket to prevent a child from obtaining them.

However, Nisula testified that she never had her prescription pill bottle in Neujahr's vehicle; that Neujahr came over to her house prior to being arrested, asking for a shot of whiskey; that he sat at her kitchen table drinking whiskey for approximately 45 minutes; that her clorazepate was on the same table during this time period; and that while he was sitting at the table, she was cleaning house and was, for part of the time, in a different room of the house.

The jury found Neujahr guilty of knowingly or intentionally possessing a controlled substance. The Court of Appeals

reversed Neujahr's conviction, finding that the trial court erred in not properly instructing the jury regarding Neujahr's claim that he did not know the pills in his pocket were a controlled substance and in admitting certain hearsay testimony. The State petitions for further review.

## ANALYSIS

### HEARSAY

The State first contends the Court of Appeals erred in finding that the trial court erroneously admitted into evidence certain inadmissible hearsay. During the trial, Nisula was called as a witness by the defense. During cross–examination by the State, Nisula was asked if she had a conversation with Johnson regarding Neujahr. Defense counsel timely objected to the question on the basis of hearsay, and the court overruled the objection. Nisula then testified that "[s]he [Johnson] informed me that Greg [Neujahr] was in jail and that he had called [Johnson] and asked her to ask me if I would come into court and state that I· had dropped my medication in his truck." The Court of Appeals found this statement to be hearsay and concluded that the trial court erred in admitting it into evidence.

Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Neb. Evid. R. 801(3). "Hearsay is not admissible except as provided by [the] rules [of evidence] or by other rules adopted by the statutes of the State of Nebraska." Neb. Evid. R. 802. We find that Nisula's testimony about what both Johnson and Neujahr said raises multiple hearsay concerns.

"A statement is not hearsay if . . . [t]he statement is offered against a party and is . . . his own statement, in either his individual or representative capacity." Rule 801(4)(b)(i). An oral admission by a party can be shown only by the testimony of a person who heard it; a witness who did not hear the admission cannot testify as to what a person who did hear the admission told him or her about it. See *State v. Evans*, 169 N.W.2d 200 (Iowa 1969), citing with approval 31A C.J.S. *Evidence* § 193 i. at 546. Thus, rule 801(4)(b)(i) is inapplicable because Nisula did not personally hear Neujahr make the

statement in question to Johnson. As a result, Nisula's testimony about what Johnson stated that Neujahr said is multiple hearsay if offered to prove the truth of the matter asserted.

The State argues that Nisula's testimony was not hearsay because it was not offered to prove the truth of the matter asserted, but to show that Neujahr made a request through Johnson for Nisula to perjure herself. The State correctly argues that it did not offer the statements to prove that Nisula dropped her pills in Neujahr's vehicle. However, Nisula's testimony also asserted that Neujahr attempted to have Johnson obtain false testimony. Thus, the truth of what Johnson told Nisula is a matter the State was trying to prove through Nisula's testimony. For that reason, Nisula's testimony is inadmissible hearsay unless one of the evidentiary rules exempts it.

When an out-of-court statement relates the content of another out-of-court statement, there must be an independent hearsay exception for each statement. Neb. Evid. R. 805. See *Behm v. Northwestern Bell Tel. Co.*, 241 Neb. 838, 491 N.W.2d 334, (1992). We find none of the evidentiary exceptions to hearsay applicable to either Neujahr's or Johnson's out-of-court statements. As a result, it was error for the trial court to admit Nisula's inadmissible hearsay testimony into evidence.

### HARMLESS ERROR

The erroneous admission of evidence in a criminal trial is not prejudicial if it can be said that the error was harmless beyond a reasonable doubt. *State v. Lee*, 247 Neb. 83, 525 N.W.2d 179 (1994); *State v. Fahlk*, 246 Neb. 834, 524 N.W.2d 39 (1994). In determining whether error in admitting evidence was harmless, an appellate court bases its decision on the entire record in determining whether the evidence materially influenced the jury in a verdict adverse to the defendant. *State v. Lee, supra.* The erroneous admission of evidence is harmless error and does not require reversal if the evidence is cumulative and if other relevant evidence, properly admitted, supports the finding by the trier of fact. *Id.*; *State v. Fahlk, supra.*

In the instant case, before Nisula's hearsay testimony was adduced by the State on cross-examination, she was asked and

answered the following question by defense counsel on direct examination:

Q Did you ever indicate to Pam Johnson that you would come to the courthouse and to my office to get this matter cleared up?

A Pam [Johnson] asked me if I would. And — Pam — How it started out, Pam asked me if I would come into court and lie and say that I dropped my prescription in Greg's [Neujahr's] truck.

Once again, Nisula's testimony about Johnson's out-of-court statement was inadmissible hearsay. However, defense counsel did not move to strike Nisula's answer. "The failure to make a timely objection or motion to strike will ordinarily bar a party from later claiming error in the admission of testimony." *State v. Archbold*, 217 Neb. 345, 352, 350 N.W.2d 500, 505 (1984). See, also, Neb. Evid. R. 103.

Furthermore, Nisula also testified on cross-examination that on one occasion while she and her sons were playing cards, Neujahr himself appeared at the residence and asked her if she "would come into court and say that [she] had dropped [her] prescription in his truck." Nisula further testified that Neujahr told her he would make it worth her while by trying to raise $500 in exchange for her testimony. These statements made by Neujahr, directly to Nisula, were offered against him at trial and thus were not hearsay. See rule 801(4)(b)(i).

Thus, clearly the jury was aware through admissible testimony, or testimony to which there was no timely objection, that both Johnson and Neujahr had asked Nisula to testify that she dropped her prescription pills in Neujahr's vehicle. This relevant evidence, properly admitted, supports the finding by the trier of fact that Neujahr knowingly possessed a controlled substance. Therefore, the hearsay testimony that was improperly admitted was merely cumulative and could not have prejudiced Neujahr by materially influencing the jury in its verdict. As a result, we find the trial court's erroneous admission of this hearsay testimony harmless beyond a reasonable doubt.

## JURY INSTRUCTIONS

The State next contends the Court of Appeals erred in finding

that the trial court did not properly instruct the jury regarding Neujahr's claim that he did not know the pills in his pocket were a controlled substance. The trial court instructed the jury in pertinent part as follows:

INSTRUCTION NO. 4

The material elements which the State must prove beyond a reasonable doubt in order to convict the defendant of the offense charged in the Information are:

1. That the defendant, Gregory T. Neujahr;
2. Possessed clorazepate, a controlled substance;
3. That he did so knowingly or intentionally;
4. That he did so in York County, Nebraska; and
5. That he did so on or about August 25, 1993.

If you decide that the State proved each element beyond a reasonable doubt then you must find the defendant guilty. Otherwise, you must find the defendant not guilty.

. . . .

INSTRUCTION NO. 5

"Possession" of clorazepate means either knowingly having it on one's person or knowing of the object's presence and having control over the object.

. . . .

INSTRUCTION NO. 6

The law of Nebraska provides that it shall be unlawful for any person knowingly or intentionally to possess a controlled substance.

Clorazepate is a controlled substance as classified by Nebraska law.

The term intentionally means willfully or purposely and not accidentally or involuntarily.

The term knowingly refers to an act done with awareness that it will cause such a result.

Neujahr requested the following instruction be given to the jury: "You are hereby instructed that before you can find the defendant guilty of knowingly and intentionally possessing a controlled substance you must find that he knew that the drug in his possession was a controlled substance to-wit: clorazepate and that his possession was not inadvertent." Neujahr also tendered to the trial court a proposed instruction defining the term "knowingly" as "1) having knowledge; 2) shrewd; clever;

3) implying shrewed [sic] or secret understanding" and the term "intentionally" as "1) a determination to act in a specified way; 2) done purposely." The trial court refused to give these instructions.

During its deliberations, the jury asked the court the following question: "Did [Neujahr] have to know it was a controlled substance?" The court answered this question by further instructing the jury as. follows: "You're instructed to reread instructions 4, 5, and 6 and continue with your deliberations."

On appeal, Neujahr argued the trial court erred in failing to define the terms "knowingly" and "intentionally" and in failing · to further explain or define the law after inquiry by the jury. Neujahr maintained it was prejudicial error for the trial court to refuse his instructions. The Court of Appeals held the trial court did not properly instruct the jury regarding Neujahr's claim that he did not know the pills in his pocket were a controlled substance. The Court of Appeals reasoned that under the trial court's instructions, "Neujahr could be guilty if he knowingly had possession of the pills without realizing that they were clorazepate." *State v. Neujahr*, 95 NCA No. 20 at 50, case No. A–94–663 (not designated for permanent publication).

To establish reversible error from a court's refusal to give a requested instruction, an appellant has the burden to show that (1) the tendered instruction is a correct statement of the law, (2) the tendered instruction is warranted by the evidence, and (3) the appellant was prejudiced by the court's refusal to give the tendered instruction. *State v. Derry, ante* p. 260, 534 N.W.2d 302 (1995); *State v. Trackwell*, 244 Neb. 925, 509 N.W.2d 638 (1994); *State v. Myers*, 244 Neb. 905, 510 N.W.2d 58 (1994).

First, Neujahr's tendered instruction was not a correct statement of the law. The substance of his tendered instruction was that the jury must find that he knew the pills in his possession were clorazepate. However, this court has repeatedly held that "[o]ne possesses a controlled substance when one knows of the nature or character of the substance and of its presence and has dominion or control over it." *State v. DeGroat*, 244 Neb. 764, 768, 508 N.W.2d 861, 865 (1993); *State v. Harney*, 237 Neb. 512, 466 N.W.2d 540 (1991); *State*

*v. Williams*, 211 Neb. 650, 319 N.W.2d 748 (1982). Thus, the State must prove that Neujahr knew the pills he possessed were a controlled substance, not that he knew the pills were clorazepate.

It is not error for a trial court to refuse to give a defendant's requested instruction where the substance of the requested instruction was covered in the instructions given. *State v. Hernandez*, 242 Neb. 78, 493 N.W.2d 181 (1992). All the jury instructions must be read together, and if taken as a whole they correctly state the law, are not misleading, and adequately cover the issues supported by the pleadings and the evidence, there is no prejudicial error necessitating a reversal. *State v. Lowe, ante* p. 215, 533 N.W.2d 99 (1995); *State v. McHenry*, 247 Neb. 167, 525 N.W.2d 620 (1995); *State v. Myers, supra.*

The instructions given, taken as a whole, adequately advised the jury that, in order to convict, the law required Neujahr to know that the substance he possessed was a controlled substance.

Instruction No. 6 states that "[t]he law of Nebraska provides that it shall be unlawful for any person knowingly or intentionally to possess a controlled substance." This instruction is substantively identical to the possession of a controlled substance statute, § 28–416(3), under which Neujahr was charged. That statute states in pertinent part, "[A] person knowingly or intentionally possessing a controlled substance . . . shall be guilty of a Class IV felony." In *State v. Friend*, 230 Neb. 765, 773, 433 N.W.2d 512, 517 (1988), this court held, "As a general rule, in giving instructions to the jury, it is proper for the court to describe the offense in the language of the statute." In that case, we found the trial court properly "instructed the jury on the elements of the crime, including the statutorily defined words, 'knowingly or intentionally' possessed a controlled substance." *Id.*

Furthermore, instruction No. 6 states that the term "knowingly" refers to an act done with awareness that it will cause such a result. Thus, the instruction requires the State to prove that Neujahr's act was done with awareness that it would cause him to possess a controlled substance. In other words, the instruction requires the jury to find that Neujahr was aware that

it was a controlled substance he possessed, in order to render a guilty verdict.

Moreover, instruction No. 5 states, " 'Possession' of clorazepate means either knowingly having it on one's person or knowing of the object's presence and having control over the object." "[I]t," "object's," and "object," refer to clorazepate, a controlled substance. Stated another way, the instruction reads that possession of a controlled substance means either knowingly having a controlled substance on one's person or knowing of the presence of the controlled substance and having control over the controlled substance.

Thus, the gist of Neujahr's requested instructions was covered in the instructions given which, taken as a whole, correctly stated the law, were not misleading, and adequately covered the issues supported by the evidence. As a result, Neujahr was not prejudiced by the trial court's refusal to give his requested instructions.

Neujahr further argues that the trial court erred when it refused to offer a further instruction after the jury posed the question, "Did he have to know it was a controlled substance?" A court can, in the exercise of its discretion, refuse to reply to questions from the jury regarding the applicable law. See *Griffith v. State*, 157 Neb. 448, 59 N.W.2d 701 (1953). This court stated in *Savary v. State*, 62 Neb. 166, 87 N.W. 34 (1901):

> When a point arising in a criminal trial has been covered in an instruction to the jury, it is not error to refer to such instruction as answering an inquiry submitted by the jury during their deliberations, in place of giving another instruction on the same point, although another instruction might properly have been given.

(Syllabus of the court.)

In the instant case, the trial court referred the jury to the instructions which were pertinent to its question. Because the question raised by the jury was adequately covered by the instructions given, the trial court did not abuse its discretion by referring the jury to the instructions.

## PROSECUTORIAL MISCONDUCT

After the clorazepate pills were removed from Neujahr's

pocket during the booking procedure following his arrest, Deputy Kosmicki asked Neujahr what the tablets were. Deputy Kosmicki recorded in his police report that Neujahr's response was that "they were his Advil." During discovery, Neujahr made a request of the State to turn over any statements made by Neujahr. No order was included in the record. However, it would appear from the bill of exceptions that Neujahr's request for discovery was granted. The scope of discovery is controlled by Neb. Rev. Stat. § 29-1912 (Reissue 1989). That section provides in pertinent part:

> (1) When a defendant is charged with a felony . . . he or she may request the court where the case is to be tried, at any time after the filing of the indictment, information, or complaint to order the prosecuting attorney to permit the defendant to inspect and copy or photograph:
>
> (a) The defendant's statement, if any. For purposes of this subdivision statement shall mean a written statement made by the defendant and signed or otherwise adopted or approved by him or her, or a stenographic, mechanical, electrical, or *other recording*, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by the defendant to an agent of the prosecution, state, or political subdivision thereof, and *recorded contemporaneously* with the making of such oral statement.

(Emphasis supplied.)

In its answer to discovery, just a few days before trial, the State said it was not in possession of a "statement" made by Neujahr, as that term is defined by § 29-1912. At trial, the State used Neujahr's oral statement that "they were his Advil" against him. On appeal, Neujahr alleged that the State's failure to comply with discovery constituted prosecutorial misconduct which required a vacation of the verdict. With respect to this assigned error, the Court of Appeals found that it simply did not have a sufficient amount of information in the record to fully consider the issue. The Court of Appeals went on to state that "[i]f the case did not have to be retried, the matter would cause us great concern. However, since the case must be retried, we decline to address this issue due to the lack of an adequate

record." *State v. Neujahr*, 95 NCA No. 20 at 41, case No. A–94–663 (not designated for permanent publication).

The Nebraska Supreme Court, upon granting further review which results in the reversal of a decision of the Nebraska Court of Appeals, may consider, as it deems appropriate, some or all of the assignments of error the Court of Appeals did not reach. *Coppi v. West Am. Ins. Co.*, 247 Neb. 1, 524 N.W.2d 804 (1994). We deem it appropriate to consider this assigned error.

We also are concerned that Neujahr's request for discovery was not complied with by the State until a few days before trial. The discovery process is not a game of "hide the ball," and discovery orders must be completed in a timely manner. However, given the state of the record, we are unable to determine when the State was to comply and whether sanctions should have been issued.

Assuming, for the sake of argument without deciding, that Deputy Kosmicki's act of including Neujahr's statement in the police report was a contemporaneous recording of a statement for purposes of § 29–1912, we conclude the State's failure to turn over this statement during discovery did not prejudice Neujahr.

In order for the State to convict Neujahr for possession of a controlled substance, it must prove two elements: (1) Neujahr knowingly possessed a substance, and (2) he knew of the nature or character of the substance, i.e., he knew it was a controlled substance. Neujahr's statement that "they were his Advil" does nothing to establish that he knew the nature or character of the substance he possessed. Thus, the State's failure to turn over this statement during discovery could not have prejudiced Neujahr so far as the second element of the offense is concerned.

However, it is true that this statement tended to show that Neujahr knew he was in possession of a substance. Thus, the State's failure to comply with discovery had the potential to prejudice Neujahr so far as the first element of the offense is concerned. However, Neujahr himself testified that Nisula accidentally dropped the pills in his vehicle and that he picked them up, placed them in a cellophane cigarette wrapper, and put them in his pocket to prevent a child from obtaining them.

Thus, Neujahr admitted that he knew he possessed the pills. Because Neujahr's statement related only to an element of the offense that Neujahr admitted, the State's failure to turn the statement over to Neujahr during discovery did not rise to the level of prejudicial error.

## CONCLUSION

We find that the hearsay testimony admitted into evidence was harmless error, that the trial court properly instructed the jury, and that the State's failure to comply with discovery did not prejudice Neujahr. Accordingly, we reverse the Court of Appeals' decision and remand the cause to that court with direction that it reinstate the jury's verdict.

REVERSED AND REMANDED WITH DIRECTION.