STATE OF NEBRASKA, APPELLEE, v. TERRY D. LOMACK, APPELLANT.

545 N.W.2d 455

Filed March 26, 1996.   No. A-95-291.

Dennis R. Keefe, Lancaster County Public Defender, and Margene M. Timm for appellant.

Don Stenberg, Attorney General, and Kimberly A. Klein for appellee.

SIEVERS, Chief Judge, and IRWIN and MUES, Judges.

MUES, Judge.

Terry D. Lomack appeals his conviction for unlawful possession of a controlled substance, cocaine, in violation of Neb. Rev. Stat. § 28-416 (Cum. Supp. 1994). Lomack asserts that the trial court erred by (1) denying his motion to suppress,

(2) granting the State's motion in limine prohibiting Lomack from inquiry and argument as to the identity of the State's confidential informant (CI), (3) refusing to give Lomack's proposed jury instruction on possession of a controlled substance, and (4) finding that Lomack was a habitual criminal.

## FACTS

On March 9, 1994, Det. Sgt. Dennis Miller of the Lincoln Police Department received information from a CI that an individual, Terry Lomack, would be coming to Lincoln from Omaha with a quantity of rock cocaine, also known as crack cocaine. The informant did not specify the quantity of cocaine Lomack would be carrying or how he or she knew Lomack. The informant did tell Sergeant Miller that Lomack would be coming to Lincoln shortly, driving a black Ford pickup with the commercial license plate No. 2–29204, and that there would be a passenger in the vehicle with Lomack. Sergeant Miller checked the registration of the vehicle with the license number given and found it to be a blue Ford pickup registered to a Willie Lomack, whose address was determined to be the same as that of the defendant, Terry Lomack.

The CI who provided the information had worked with the Lincoln Police Department on several occasions since 1991. Sergeant Miller testified that past information provided by this CI had resulted in at least 16 felony arrests. On this occasion, the informant was paid for his or her services, but did not receive any benefits in the form of reduced or dismissed charges and was not on parole or probation.

In reliance on the information provided, surveillance was set up to watch for the vehicle described by the informant. The truck was spotted on its way into Lincoln and was eventually stopped at the intersection of 27th and Superior Streets. At the time of the stop, six police officers were present. Officer Clark Wittwer's car was positioned in front of Lomack's pickup, Officer Thomas Ward's vehicle was located behind the pickup, and Sergeant Miller's vehicle was on the left side of the pickup. Also present were Officer William Snoad and an Investigator Gambrell, and an Officer Santacroce soon arrived.

According to the various officers' testimony, the arrest occurred as follows: Officer Ward had followed Lomack once Lomack came into Lincoln, and when the vehicles came to a traffic light and stopped, Officer Ward activated his lights, approached Lomack's vehicle, and was joined by Officer Snoad. Officer Ward asked Lomack for his driver's license, registration, and insurance card. Lomack responded by patting down his pockets and going through a notebook as if looking for identification. When Lomack turned away from the officers and was "messing around" with something on the seat of the pickup, Officer Snoad instructed Officer Ward to order Lomack out of the pickup for safety reasons. Lomack refused to comply with Officer Ward's order, and the officer repeated the order several times. Then Officer Ward, with the assistance of Officer Snoad, pulled Lomack out of the vehicle.

Once Lomack was outside the vehicle, the officers ordered him to place his hands on the "bedrails" of the pickup. Lomack instead leaned over and placed his hands inside the bed of the pickup. Officer Snoad then witnessed Lomack put a small metal pipe inside his mouth. The officers ordered Lomack to spit the item out, which he did after several requests. When Lomack spat the pipe out, Officer Snoad saw a small clear plastic baggie in Lomack's mouth. Officer Snoad ordered Lomack to spit this out also. Lomack did not comply and began struggling with the officers. The officers took Lomack to the ground as he continued to struggle. Officers Snoad, Ward, and Wittwer testified that they each attempted to apply pressure to Lomack's jaw in order to get him to open his mouth, but were unsuccessful. Officer Wittwer then applied a lateral vascular neck restraint. After approximately 5 to 10 seconds, Lomack lost consciousness, and Officer Snoad pulled the plastic baggie out of Lomack's mouth. The baggie was placed into custody and was later determined to contain several rocks of crack cocaine. Lomack regained consciousness 15 to 30 seconds later. There was evidence that there was a small amount of blood around Lomack's mouth following the incident. However, there was no evidence that the bleeding resulted from a serious cut which required medical attention. After regaining consciousness, Lomack was handcuffed and transported to the police

department. Although Lomack testified that he vomited as a result of the incident and requested to be taken to the hospital, Lomack admitted that when the police offered to transport him to the hospital, he declined.

According to Lomack's testimony at trial, Willie Rodriguez, the passenger in his vehicle, was Lomack's acquaintance, current coemployee, and former employee. On March 9, 1994, Lomack had received his paycheck 1 day early from GFRC Inc., where both Lomack and Rodriguez were then working. Lomack testified that after work on March 9, Rodriguez asked Lomack for a ride home and then requested a loan of $200 so that Rodriguez could pay it to his brother–in–law. Despite the fact that Lomack had previously loaned Rodriguez $325 which he had failed to pay back, Lomack testified that he agreed to loan Rodriguez the additional $200 upon the promise that Rodriguez would pay Lomack back all of the money owed the following day when Rodriguez received his paycheck, even though Lomack knew that Rodriguez' check would only be approximately $350.

In addition to loaning Rodriguez the additional $200, Lomack gave Rodriguez a ride to Omaha so that Rodriguez could give the money to his brother–in–law. Lomack testified that Rodriguez appeared excited and talkative on the way to Omaha, but was quiet on the way back, saying that he felt sick. When Lomack stopped to get gas on the way to Omaha, Rodriguez made a phone call. Again on the way back from Omaha, Lomack saw Rodriguez place a call. Lomack also testified that he did not see any drugs or talk about drugs on the way to Omaha.

As Lomack and Rodriguez returned to Lincoln, Lomack saw a police car following him and stopped when it activated its lights. Lomack testified that an officer had a gun drawn and pointed at him and that an officer requested identification from him. According to Lomack, he looked for his identification, which he thought was inside of a notebook lying in the middle of the seat. As he looked on the seat next to him for the identification, Lomack noticed a pack of cigarettes which he had bought for Rodriguez as well as what he referred to as "something plastic — little plastic deal and a silver deal."

Lomack testified that he did not recognize the two items and that they did not belong to him, but he knew that they were something illegal. Lomack then picked up the two items just before being removed from the pickup. It was Lomack's contention that he took the items so that he could present them to the officers and tell them that the items belonged to Rodriguez because he did not want them found in his father's truck. Lomack stated that as he was being removed from the truck, he placed the "tubular, silver deal" in his mouth to show the officers that it was not a knife. Lomack also stated that he put the plastic baggie in his mouth so that the officers could see it. According to Lomack, when the officers grabbed him, the plastic baggie got wedged in his throat, and he was unable to spit it out at the officers' requests.

## PROCEDURAL HISTORY

An information was filed in the district court for Lancaster County on April 25, 1994, charging Lomack with the possession of a controlled substance and with being a habitual criminal. In a motion to suppress filed on August 15, Lomack challenged the stop of his vehicle, his arrest, the evidence seized from his body, and any visual or auditory observations made by the police officers because the police lacked probable cause as well as articulable suspicion for stopping his truck.

A hearing on Lomack's motion to suppress was held on November 10, 1994. In an order dated December 2, the court overruled the motion to suppress, finding that the police had reasonable suspicion supported by articulable facts to stop Lomack and detain him for investigative purposes and that this suspicion was elevated to probable cause when Lomack failed to obey the lawful orders of the officers.

Trial commenced on January 17, 1995. After opening statements, the State orally presented a motion in limine, seeking an order that Lomack be prohibited from attempting "to gain the [confidential] informant's name." The basis for the State's motion in limine was Neb. Evid. R. 510, Neb. Rev. Stat. § 27–510 (Reissue 1989), which, subject to certain conditions and exceptions, grants to the government a privilege to refuse to disclose the identity of a person who has furnished information relating to or assisting in an investigation of a possible

violation of law. Lomack's counsel resisted such prohibition, arguing that she had intended to question Sergeant Miller as to whether the CI was Rodriguez because it was crucial to Lomack's defense that Rodriguez had set him up and Rodriguez' status as the CI provided a motive for such action. The trial court sustained the State's motion and ordered Lomack to refrain from asking the police officers at trial to identify the CI.

At the conclusion of the evidence, the State asked the court to clarify the order in limine as to what could be argued by Lomack in closing arguments. The court ordered that there was to be no reference made to Rodriguez as the CI by defense counsel, although it was acceptable to argue the reasonable inferences to be drawn from the fact that Rodriguez, on the trip to and from Omaha, had made phone calls and to argue that he might have been the one who tipped off the police as to Lomack's possession of the contraband, without specifically calling him the CI.

Following the presentation of evidence, a jury instruction conference was held at which Lomack's attorney objected to the court's proposed instructions Nos. 4, 6, and 8, arguing that the court's instructions allowed Lomack to be convicted of possession without knowing the character of what he possessed. Instead, Lomack's counsel orally offered proposed instruction No. 2, which defined possession of a controlled substance. The court both overruled Lomack's objections and denied his request for the proposed instruction.

The jury returned a verdict on January 20, 1995, finding Lomack guilty as charged in the information. The court then ordered a presentence investigation. Lomack filed a motion for a new trial on January 30, and the matter came on for hearing on February 16. At the hearing, the court denied the motion for a new trial and proceeded with the enhancement and sentencing. The court found the habitual criminal charges as alleged in the information to be true and sentenced Lomack to not less than 10 nor more than 14 years' imprisonment. This appeal follows.

## ASSIGNMENTS OF ERROR

In his appeal, Lomack alleges that the district court erred by (1) overruling his motion to suppress, (2) granting the State's motion in limine which prohibited the inquiry and argument as

to the identity of the State's CI, (3) refusing to give Lomack's proposed jury instruction on the word "knowingly" and on "possession" of a controlled substance, and (4) finding that Lomack was a habitual criminal.

## ANALYSIS

*Motion to Suppress.*

■ A trial court's ruling on a motion to suppress is to be upheld on appeal unless its findings of fact are clearly erroneous. *State v. Grimes*, 246 Neb. 473, 519 N.W.2d 507 (1994); *State v. Flores*, 245 Neb. 179, 512 N.W.2d 128 (1994). In determining whether a trial court's findings on a motion to suppress are clearly erroneous, an appellate court does not reweigh the evidence or resolve conflicts in the evidence, but, rather, recognizes the trial court as the finder of fact and takes into consideration that it observed the witnesses. *Grimes, supra*; *State v. Dyer*, 245 Neb. 385, 513 N.W.2d 316 (1994).

*Probable Cause.*

■ Lomack argues that the trial court should have sustained his motion to suppress evidence, since the police lacked probable cause when they arrested him without a warrant and because the evidence was seized by unreasonable means. Probable cause for a warrantless arrest exists where the facts and circumstances within an officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to warrant one of reasonable caution to believe that there was a fair probability that an offense has been or is being committed. See, *Illinois v. Gates*, 462 U.S. 213, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983); *State v. Roach*, 234 Neb. 620, 452 N.W.2d 262 (1990). Thus, the key to a lawful arrest without a warrant is reasonable or probable cause to believe that a person has committed a crime. *Roach, supra*; *State v. Moore*, 226 Neb. 347, 411 N.W.2d 345 (1987).

■ To determine whether probable cause existed to arrest Lomack without a warrant, it must first be determined at what point Lomack was arrested. It is the State's contention that when Lomack was first stopped, the police were simply conducting an investigatory stop based upon the reasonable suspicion that Lomack was, had been, or was about to be

engaged in criminal behavior. However, a person is seized, or arrested, for Fourth Amendment purposes when, in view of all of the circumstances surrounding the incident, a reasonable person would believe that he or she is not free to leave. *United States v. Mendenhall*, 446 U.S. 544, 100 S. Ct. 1870, 64 L. Ed. 2d 497 (1980); *State v. Bronson*, 242 Neb. 931, 496 N.W.2d 882 (1993). The record indicates that when Lomack was first stopped, there were officers parked in front, behind, and to the left of his vehicle. Even though there was some dispute as to whether or not the officers had their guns drawn, the State concedes that there were six officers present surrounding Lomack's vehicle. It is clear, in light of these circumstances, that a reasonable person would not believe he or she was free to leave. Therefore, Lomack was seized for Fourth Amendment purposes at the time he was initially stopped.

The record shows that Lomack was stopped solely based upon the information provided by the CI along with the verification and observations made by the police officers. Police can have probable cause for a warrantless arrest based on information from an informant if the information from the informant, when taken as a whole in light of underlying circumstances, is reliable. See, *State v. Blakely*, 227 Neb. 816, 420 N.W.2d 300 (1988); *State v. Butler*, 207 Neb. 760, 301 N.W.2d 332 (1981). The reliability of an informant may be established in four ways: (1) The informant has given reliable information to police officers in the past, (2) the informant is a citizen informant, (3) the informant has made a statement that is against his or her penal interest, or (4) a police officer's independent investigation establishes the informant's reliability or the reliability of the information the informant has given. See, *State v. Grimes*, 246 Neb. 473, 519 N.W.2d 507 (1994); *State v. Utterback*, 240 Neb. 981, 485 N.W.2d 760 (1992).

Sergeant Miller testified that the informant who provided the information regarding Lomack had been working with the police since 1991. The information provided by this particular informant had resulted in at least 16 felony arrests, many of which had led to convictions. The informant had also been used by the police to buy drugs and had, in the past, been wired for sound. According to Sergeant Miller, there had never been a

time when this informant's information "did not pan out." The necessary reliability of the information was established by several instances of past reliability. We therefore find that the district court was not clearly wrong in denying Lomack's motion to suppress his arrest because probable cause existed for the arrest.

*Intrusive Search.*

Lomack also argues that the court should have granted his motion to suppress because unreasonable means were employed in retrieving the cocaine from his mouth, in violation of the Fourth Amendment. The Nebraska Supreme Court addressed the issue of intrusive body searches in *State v. Thompson*, 244 Neb. 189, 505 N.W.2d 673 (1993), and *State v. Harris*, 244 Neb. 289, 505 N.W.2d 724 (1993).

In *Thompson*, the police witnessed the defendant making a motion to his mouth with his hand, noticed white crumbs around the defendant's mouth, and ordered the defendant to open his mouth. When the defendant refused to comply with the order and began to struggle, the police employed a lateral vascular neck restraint on the defendant which resulted in the defendant's becoming unconscious for approximately 10 seconds. While the defendant was unconscious, the police removed crack–cocaine–like substances off the defendant's lips and from around his teeth. In determining whether the intrusive search was constitutional under the Fourth Amendment, the court looked to the following factors set out in *Schmerber v. California*, 384 U.S. 757, 86 S. Ct. 1826, 16 L. Ed. 2d 908 (1966): (1) whether the government had a clear indication that incriminating evidence would be found; (2) whether the police had a warrant or there existed exigent circumstances, such as the imminent destruction of evidence, to excuse the warrant requirement; and (3) whether the method used to extract the evidence was reasonable and performed in a reasonable manner.

The court in *Thompson* determined that because of the defendant's behavior there were strong indications that evidence would be found in and around his mouth. Further, the court found that exigent circumstances existed, since the defendant appeared to be destroying evidence which could have been

metabolized before a blood test could be performed. The court also concluded that the substance in and around the defendant's mouth was easily removed and that the method used to seize it was reasonable, finding that the defendant suffered only momentary discomfort and minimal intrusion. In so deciding, the court noted that "[i]n reviewing the amount of force used, a court must make allowance for the fact that police officers are often forced to make split-second judgments, in circumstances that are tense, uncertain, and rapidly evolving, about the force that is necessary in a particular situation." *Id.* at 200, 505 N.W.2d at 680.

Similarly, in *Harris, supra,* the police noticed the defendant chewing something and requested that he open his mouth. When the defendant refused and continued chewing, an officer grabbed the defendant's throat and ordered him to spit the object out. The defendant again refused to comply and began to struggle with the officers. The officers used a lateral vascular neck restraint and a Heimlich-type maneuver on the defendant in order to get him to eject what was in his mouth and throat. As a result, the defendant received a small cut to the mouth and stated that his throat hurt for 3 or 4 days after the struggle. Immediately following an ejection from the defendant's mouth and throat, the officers found in the defendant's right hand a saliva-covered baggie which appeared to contain cocaine.

The court in *Harris,* as it had done in *Thompson,* examined the constitutionality of the intrusive search in terms of the criteria set out in *Schmerber.* The court found that the police had a clear indication that the defendant was attempting to swallow narcotics and that exigent circumstances existed, since the police had no way of knowing whether or not the drugs could be retrieved later and because of the possible health risks involved had the defendant swallowed the narcotics. In analyzing the reasonableness of the search, the court balanced the " 'extent to which the procedure may threaten the safety or health of the individual' and the extent to which the procedure intrudes on 'the individual's dignitary interests in personal privacy and bodily integrity' " with the community's interests in " 'fairly and accurately determining guilt or innocence.' " *Harris,* 244 Neb. at 296, 505 N.W.2d at 729, quoting *Winston*

*v. Lee*, 470 U.S. 753, 105 S. Ct. 1611, 84 L. Ed. 2d 662 (1985). The court determined that the trial court was not clearly wrong in finding that the police had used reasonable force in extracting the narcotics, since the intrusion upon the defendant was minimal when compared with the community's interests.

In applying the *Schmerber* criteria to the circumstances presented here, Lomack concedes that "there is no dispute as to the first factor, that the police had a clear indication that incriminating evidence would be found." Brief for appellant at 21. Lomack, however, asserts that the second factor, exigent circumstances, did not exist. Lomack attempts to distinguish his situation from *Thompson* and *Harris* by arguing that there were no exigent circumstances, since the cocaine in his mouth was packaged and therefore could not have been digested. However, there is nothing to show that the officers could have determined, when making their split–second decision, how effectively the substance was packaged or whether Lomack could have bitten through the packaging. As stated in *Harris*,

> If the crack cocaine was unpackaged, the narcotic could have been metabolized before the police could obtain a blood sample or induce vomiting. The possibility existed that the evidence would be destroyed if the officers did not act immediately to prevent [the defendant] from swallowing it. Moreover, as the district court found, [the defendant] could have been endangered had the police officers allowed [the defendant] to swallow the suspected narcotic.

244 Neb. at 301, 505 N.W.2d at 732.

Because of the possibility that the evidence in Lomack's mouth could have been destroyed or that Lomack could have injured himself by ingesting the cocaine, we find that the district court did not err in finding that exigent circumstances existed.

■ Although the determination must be made in light of the fundamental criteria laid down by the Fourth Amendment and in court opinions applying that amendment, the reasonableness of a search is a substantive determination to be made by the trial court from the facts and circumstances of the case. See, *State v. Sharp*, 184 Neb. 411, 168 N.W.2d 267 (1969); *State v. O'Kelly*, 175 Neb. 798, 124 N.W.2d 211 (1963), *cert. denied* 376 U.S.

956, 84 S. Ct. 978, 11 L. Ed. 2d 975 (1964). While the district court here made no specific factual findings as to the reasonableness of the search, it did determine that the "force used by the officers to extract the evidence from [Lomack's] mouth was reasonable under all of the circumstances shown by the evidence." The evidence is clear that Lomack was not permanently injured and that he, at most, suffered a small cut to the mouth. Also, the intrusion into Lomack's body, that of removing the baggie from his mouth, was minimal. Therefore, we find that the trial court was not clearly wrong in finding that the search was reasonable or in denying the motion to suppress.

*Motion in Limine.*

Lomack's second assignment of error is that the court erred in prohibiting him from asking of the State's witnesses the identity of the State's CI and in precluding him from arguing that Rodriguez was the CI. Lomack, presuming that proper questioning would reveal the CI to be Rodriguez, argues that such disclosure was crucial to his defense. This defense was that the cocaine belonged to Rodriguez, who set him up by planting the cocaine in the pickup and then calling Sergeant Miller. The State asserts that the order excluding this line of questioning was proper under § 27–510. Lomack also maintains that any privilege the State held regarding the identity of the CI was waived when the State disclosed Rodriguez as a CI in another case pending against Lomack. In the present case, neither the State nor Lomack called Rodriguez as a witness.

Section 27–510 provides that the State has "a privilege to refuse to disclose the identity of a person who has furnished information relating to or assisting in an investigation of a possible violation of law." However, § 27–510 also places certain limitations on this privilege. Specifically, § 27–510 provides in pertinent part:

> (3)(a) No privilege exists under this rule if the identity of the informer or his interest in the subject matter of his communication has been disclosed to those who would have cause to resent the communication by a holder of the privilege or by the informer's own action, or if the informer appears as a witness.

(b) If it appears from the evidence in the case or from other showing by a party that an informer may be able to give testimony necessary to a fair determination of the issue of guilt or innocence in a criminal case . . . and the government invokes the privilege, the judge shall give the government an opportunity to show in camera facts relevant to determining whether the informer can, in fact, supply that testimony.

The State, relying on § 27-510, orally moved for an order that "[Lomack's counsel] not attempt to gain the informant's name." Lomack's counsel argued that she had intended to ask Sergeant Miller whether Rodriguez was the CI and that this information was necessary to Lomack's defense that Rodriguez had "set up" Lomack. The court nevertheless sustained the State's motion, reasoning that prohibiting Lomack from asking whether Rodriguez was the CI did not prohibit Lomack from utilizing the setup defense.

Lomack's attorney then made a record consisting of Lomack's testimony that Rodriguez was the only person who knew Lomack was going to Omaha or knew the time he would be returning, and that Rodriguez was the only person who could have placed the contraband in the vehicle, since he was the only person with Lomack in the vehicle that day. Lomack's attorney also offered into evidence portions of a transcript from a preliminary hearing in a separate criminal proceeding which had been held June 7, 1994, wherein Lomack was charged with another drug offense. The transcript disclosed that one Willie Rodriguez was the CI in that case. Lomack then asked the court to reconsider its ruling on the State's motion in limine, again arguing that Rodriguez' status as the CI was additional motivation to set up Lomack and also arguing that the State had waived the privilege by disclosing Rodriguez as a CI in the previous proceeding. The court, still with no evidence of who the CI was, refused to reconsider its ruling on the motion and directed Lomack's counsel to not ask the State's police officers in front of the jury to identify the CI.

Prior to closing arguments, the State asked the court to clarify what could be argued by the defense to the jury. The court ordered that defense counsel was not to refer to Rodriguez

as the CI, but could argue the reasonable inferences to be drawn from the fact that Rodriguez, on the trip from Omaha to Lincoln, had made phone calls. Specifically, the court stated:

> My anticipation was that the defense would argue that this was set up and that the inference is that Mr. Rodriguez made the call and tipped off the police; without alleging or contending that Mr. Rodriguez was a confidential informant. . . .
>
> . . . .
>
> . . . [Y]ou can argue the facts as shown by the evidence — you know — which include your client's testimony that Mr. Rodriguez was the only person that knew where they were going and when they were coming back and what vehicle they would be in; and that he made phone calls along the way, and that your client testified that the controlled substance was Mr. Rodriguez' and not his.
>
> And you can argue your — your set-up theory; that your client was set up by this Willie Rodriguez and that Rodriguez had a motive due to the loan that was out standing, and that you can do all of that without saying that Mr. Rodriguez must be the confidential informant.

Lomack now asserts on appeal that the court erred in making this ruling, again arguing that (1) the State had waived the privilege by prior disclosure and, if not, (2) the disclosure of the CI's identity was necessary to a fair determination of Lomack's guilt or innocence.

*Prior Disclosure.*

Lomack first asserts that the State waived its informant privilege by disclosing that one Willie Rodriguez was the informant in a prosecution of Lomack for the sale of marijuana that occurred in January 1994. Lomack relies upon § 27-510(3)(a).

It has been said that the main purpose of the informant privilege is to encourage and ensure the free flow of information to the government. Of course, by maintaining the secrecy of the informant's identity, the informant may continue to serve in that role. Thus, the privilege necessarily has the ancillary effect of protecting the informant from retaliation. See, e.g.,

*Westinghouse Electric Corp. v. City of Burlington, Vermont*, 351 F.2d 762 (D.C. Cir. 1965).

Naturally, if the fact of informing and the identification of the informant have already been disclosed "to those who would have cause to resent the communication," the likelihood of information flowing to the government from that informant is severely reduced, if not eliminated. Section 27–510(3)(a) recognizes that such prior disclosure operates to destroy, not waive, the privilege.

The State is the holder of the privilege. § 27–510(1). In a related proceeding against Lomack, a State's witness disclosed the identity of one Willie Rodriguez as the CI. *If* Rodriguez is the informant in this case, his prior disclosure by the State strongly suggests that the State's privilege no longer exists in this case.

For Lomack to successfully assert the nonexistence of the privilege under § 27–510(3)(a), two threshold showings were necessary: first, that Rodriguez was actually the informant *in this case* and, second, that he was the same Willie Rodriguez disclosed in the separate proceeding. The record expressly discloses neither, although it may be reasonably inferred from the record that all parties, as well as the court, were proceeding on the assumption that Rodriguez was the informant in both cases. In any event, the blame for these omissions in the record cannot be laid at Lomack's feet.

As we discuss later, § 27–510(3)(b) requires a judge, if it appears that an informant may be able to give testimony necessary to a fair determination of the issue of guilt or innocence in a criminal case, to give the government an opportunity to make an in camera showing so that the judge can determine whether the informant can in fact give such testimony. While § 27–510(3)(b) expressly addresses the determination of whether an *existing* privilege must give way to the interest of the criminally accused, the procedure identified therein seems equally appropriate when the very existence of the privilege is challenged, as is the case here.

In this case, sufficient showing was made to mandate an in camera showing by the government as to whether the Willie Rodriguez from the separate matter was the CI in this case.

Without requiring this minimal showing, available only from the State at the court's insistence, the judge could not properly assess Lomack's "waiver" argument. This was error.

Because the record fails to disclose that Willie Rodriguez was the informant in this case and that he was the same Willie Rodriguez who had been disclosed as a CI in the separate proceeding, we cannot say that the district court erred in rejecting Lomack's "waiver" argument. However, the district court erred in not requiring the State to make an in camera showing of the identity of the CI in this case once Lomack had raised the issue and supported it with sufficient evidence that prior disclosure had likely occurred.

*Disclosure of Informant.*

█ Lomack next argues that if the privilege existed, the trial court erred in prohibiting him from asking about the identity of the informant, since he had adequately demonstrated that the identity of the informant was necessary to a fair determination of the issue of his guilt or innocence as required by § 27–510(3)(b). Disclosure of the identity of an informant is a matter of judicial discretion. See *State v. Wenzel*, 196 Neb. 255, 242 N.W.2d 120 (1976). In *Wenzel*, the Nebraska Supreme Court adopted the following position on the issue:

> "At the outset, we must recognize that no hard and fast rule can be patterned with reference to disclosure of the name of an informer. The trial judge must balance the public interest in protecting the flow of information against the individual's right to prepare his defense. The answer depends upon the particular facts in each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors. Roviaro v. United States, 353 U. S. 53, 62, 77 S. Ct. 623, 1 L. Ed. 2d 639 (1957). . . . [I]n balancing the interest of the government against that of the accused, the burden of proof is on the defendant to show need for the disclosure."

196 Neb. at 260, 242 N.W.2d at 123, quoting *United States v. Alvarez*, 472 F.2d 111 (9th Cir. 1973), *cert. denied* 412 U.S. 921, 93 S. Ct. 2742, 37 L. Ed. 2d 148 (1973).

We must, therefore, balance Lomack's right to make his defense against the public's interest in protecting the flow of information.

Lomack asserts that with evidence that Rodriguez was the CI, his defense that Rodriguez planted the cocaine was strengthened in that he could then argue that Rodriguez was motivated by the money received as an informant, as well as by avoidance of the $525 debt Rodriguez owed to Lomack. Indeed, if Rodriguez was the CI, disclosure to the jury of that fact would have bolstered Lomack's story and credibility. While Lomack's defense, when considered in connection with the overall facts and circumstances of the case, is weak, if not fanciful, it appears to be one of the only defenses he had. Furthermore, if Rodriguez was the CI in both cases, any public interest in protecting the free flow of information from Rodriguez as an informant was slight in light of the State's prior disclosure.

As stated above, following Lomack's offer of evidence supporting the reasons why disclosure of the CI was critical to his defense, the court refused to reconsider its previous ruling. Under § 27–510(3)(b), the court implicitly concluded that even *assuming* Rodriguez was the informant in this case, his identity or his testimony was not necessary to a fair determination of Lomack's guilt or innocence. Having so concluded, the trial court did not order an in camera showing of any kind to be made by the government. As a result, the identification of the informant and whatever testimony he held remained a secret, not only from Lomack, but also from the court.

Under the rationale of *Wenzel, supra*; *Roviaro v. United States*, 353 U.S. 53, 77 S. Ct. 623, 1 L. Ed. 2d 639 (1957); and § 27–510(3)(b), the court erred in not holding an in camera hearing and in not forcing the government to disclose, at least to the court, who the CI was in this case. Had the in camera showing disclosed that Willie Rodriguez was the CI, and the same Willie Rodriguez who had previously been disclosed as a CI against Lomack, it was error to deny Lomack the right to bring this fact before the jury. However, not all trial errors, even of a constitutional magnitude, entitle an accused to reversal of an adverse trial result; it is only prejudicial error, that is, error which cannot be said to be harmless beyond a reasonable doubt,

which requires that a conviction be set aside. *State v. Trackwell*, 244 Neb. 925, 509 N.W.2d 638 (1994). In light of the overall facts and circumstances of this particular case, we find that the trial court's error was harmless beyond a reasonable doubt.

While undisputed evidence that Rodriguez was a paid informant would have bolstered Lomack's setup defense, Lomack was still allowed to adduce evidence that Rodriguez owed him money and made several unexplained telephone calls and to argue that Rodriguez tipped off the police so long as he did not place the "CI" label on Rodriguez. Sergeant Miller testified that the person who called him was a *paid* informant. Thus, if the jury accepted Lomack's argument that Rodriguez was the "snitch," it necessarily concluded that he was paid.

More importantly, Lomack was charged with possession of a controlled substance. The ownership of the substance is not an element of the crime. While accidentally and innocently finding oneself in the presence of an illegal substance might be sufficient, under some circumstances, to avoid a finding of guilt, this case does not present such circumstances. It is undisputed that Lomack, realizing a substance was illegal, placed it in his mouth. He then tenaciously resisted all efforts to remove it. These are not reasonable reactions of one innocently surprised by the accidental discovery of planted contraband.

Although pinpointing Rodriguez as the CI would have provided an additional fact for defense counsel to use in asserting the setup defense, the fact remains that the setup defense, by Lomack's own description of the events of that day, is preposterous. Therefore, the inability to conclusively label Rodriguez as the CI, remembering that Lomack was still able to argue his setup defense, is harmless beyond a reasonable doubt.

*Jury Instructions.*

Lomack next contends that the trial court erred by refusing to give his proposed jury instruction on possession of a controlled substance. The trial court instructed the jury in pertinent part as follows:

## INSTRUCTION NUMBER 4

The material elements which the state must prove by evidence beyond a reasonable doubt in order to convict the defendant of the crime charged are:

1. That on or about March 9, 1994, the defendant, Terry D. Lomack, did knowingly or intentionally possess a controlled substance, to-wit: Cocaine.

2. That said alleged possession of a controlled substance occurred within Lancaster County, Nebraska.

. . . .

## INSTRUCTION NO. 8

You are instructed that to do an act knowingly or intentionally means to do it with the intent to violate the law and to commit the act charged.

"Possession" of a controlled substance is defined as either knowingly having it on one's person or knowing of its presence and having the right to exercise control over it.

"Intentionally" means willfully or purposely.

Lomack orally requested that the following instruction be given to the jury: "[P]ossession of a controlled substance is defined as physical or constructive possession, with knowledge of the presence of the drug and of it's [sic] character as narcotic." This request was denied.

It is Lomack's contention that the instruction requested was proper under *State v. Lonnecker*, 237 Neb. 207, 213, 465 N.W.2d 737, 742 (1991), which states: "A defendant possesses a controlled substance when the defendant knows of the nature or character of the substance and its presence and has dominion or control over the substance." Lomack argues that there was evidence to support this proposed instruction because he testified that when he picked up the bag "he did not have the requisite intent to break the law, i.e. to knowingly possess a controlled substance," and that he did not know what was in the baggie and, "at most, believed it was something illegal because it came from Willie Rodriguez." Brief for appellant at 28. Lomack concludes that based upon the instructions given, without his proposed instruction, he could have been found guilty for a mere possession of the baggie, "without knowing

that the baggie contained crack cocaine or without intending to possess crack cocaine." *Id.* at 29.

■ To establish reversible error from a court's failure to give a requested instruction, an appellant has the burden of showing that (1) the tendered instruction is a correct statement of the law, (2) the tendered instruction is warranted by the evidence, and (3) the appellant was prejudiced by the court's failure to give the tendered instruction. *State v. Derry*, 248 Neb. 260, 534 N.W.2d 302 (1995); *State v. Trackwell*, 244 Neb. 925, 509 N.W.2d 638 (1994); *State v. Myers*, 244 Neb. 905, 510 N.W.2d 58 (1994).

Section 28–416(3) provides in relevant part, "A person knowingly or intentionally possessing a controlled substance . . . shall be guilty of a Class IV felony." Recently, in *State v. Neujahr*, 248 Neb. 965, 972, 540 N.W.2d 566, 572 (1995), the Nebraska Supreme Court reiterated its position that " '[o]ne possesses a controlled substance when one knows of the nature or character of the substance and of its presence and has dominion or control over it.' " Quoting *State v. DeGroat*, 244 Neb. 764, 508 N.W.2d 861 (1993). Lomack's proposed instruction, with the exception of substituting the word "narcotic" for the phrase "controlled substance," appears to be a reasonably accurate restatement of the rule enunciated in *Lonnecker* and *Neujahr*. Moreover, the evidence certainly warranted an instruction on what constituted "possession" for purposes of a finding of guilt. Nevertheless, that does not end our analysis.

■ It is not error for a trial court to refuse to give a defendant's requested instruction where the substance of the requested instruction was covered in the instructions given. *Neujahr, supra*; *State v. Hernandez*, 242 Neb. 78, 493 N.W.2d 181 (1992). All the jury instructions must be read together, and if, taken as a whole, they correctly state the law, are not misleading, and adequately cover the issues supported by the pleadings and the evidence, there is no prejudicial error necessitating a reversal. *State v. Lowe*, 248 Neb. 215, 533 N.W.2d 99 (1995); *State v. McHenry*, 247 Neb. 167, 525 N.W.2d 620 (1995); *Myers, supra*.

That Lomack had possession of the baggie which contained the controlled substance is undisputed. While testifying that he did not know exactly what was in the baggie, Lomack did admit that he believed it was "something illegal." He seems to argue that it was necessary for the State to prove that he was aware the baggie contained cocaine in order to be convicted. With this, we disagree. A similar argument was made in *Neujahr, supra*, and was soundly rejected. In *Neujahr*, the defendant requested an instruction which, in substance, required that the jury find that Neujahr knew that the pills in his possession were clorazepate. The Supreme Court held that the State need only prove that the defendant knowingly possessed a substance and that he knew of the nature or character of the substance, i.e., he knew it was a controlled substance. It specifically rejected the notion that the State must prove that the defendant knew of the precise type of controlled substance in order to sustain a conviction. Similarly, in this case, it was unnecessary for the State to prove that Lomack knew the substance in the baggie was cocaine. It was sufficient for the State to prove that Lomack knowingly possessed the substance and that he knew of the nature or character of the substance as being a controlled substance.

In order to prove that Lomack knowingly or intentionally possessed a controlled substance, the State was required, by jury instruction No. 8, to prove that Lomack's possession was with the intent to violate the law and to commit the act charged. His act of possessing the substance could not, thus, be inadvertent or by mistake or accident. Moreover, jury instruction No. 8, in defining "possession," required the State to prove that Lomack knowingly had "it" on his person or knew of "its" presence and had the right to exercise control over "it." The "it" in jury instruction No. 8 obviously refers to a controlled substance. Thus, the State was required to prove that Lomack knowingly possessed the substance and that he knew of the nature or character of the substance as being a controlled substance.

Lomack was not prejudiced by the trial court's refusal to give the requested jury instruction. The instructions which were given, when taken as a whole, correctly stated the law, were not misleading, and adequately covered the issues presented by the

evidence. The instructions as given properly advised the jury that in order to convict Lomack, they had to find that he knew the substance he possessed was a controlled substance, not that he knew that he possessed crack cocaine. We therefore find that the trial court did not err in refusing to give Lomack's requested instruction.

*Habitual Criminal.*

Finally, Lomack claims that the trial court erred in finding that he was a habitual criminal under Neb. Rev. Stat. § 29-2221 (Cum. Supp. 1994). Section 29-2221 provides in relevant part: "Whoever has been twice convicted of crime, sentenced, and committed to prison . . . for terms of not less than one year each shall, upon conviction of a felony committed in this state, be deemed to be an habitual criminal . . . ." Lomack argues that exhibit 2 offered by the State in support of the habitual criminal allegation was not competent evidence of his prior conviction under Neb. Rev. Stat. § 29-2222 (Reissue 1989). Section 29-2222 provides:

At the hearing of any person charged with being an habitual criminal, a duly authenticated copy of the former judgment and commitment, from any court in which such judgment and commitment was had, for any of such crimes formerly committed by the party so charged, shall be competent and prima facie evidence of such former judgment and commitment.

It is Lomack's specific contention that exhibit 2 is flawed because it does not show a commitment, but only a sheriff's return. Exhibit 2 contains a certified judgment from the district court for Canadian County, Oklahoma, showing that Lomack was convicted of first degree burglary and sentenced to 10 years' imprisonment. It also contains a certified copy of a sheriff's return which reads:

Received this Judgment & Sentence on the 22nd day of August,1984, [sic] and executed the same as ordered there herein by transporting Terry Dale Lomack from the Canadian County Jail in El Reno, Okla. to the Lexington Assessment & Receiving Center in Lexington, Okla. on the 27th day of August, 1984.

In *State v. Bundy*, 181 Neb. 160, 147 N.W.2d 500 (1966), *cert. denied* 389 U.S. 871, 88 S. Ct. 152, 19 L. Ed. 2d 150 (1967), the court held that § 29-2222 does not confine the proof on the issue of the defendant's prior convictions to the documents therein mentioned. Moreover, in *State v. Coffman*, 227 Neb. 149, 416 N.W.2d 243 (1987), the court found that certified copies of the sheriff's return and warden's receipt showing the defendant's actual commitments were in substantial compliance with the requirement of proof of commitment. We therefore find that the trial court did not err in finding that Lomack was a habitual criminal.

## CONCLUSION

Because probable cause existed to arrest Lomack without a warrant and since the intrusive search of Lomack was reasonable under the circumstances, the trial court did not err in denying Lomack's motion to suppress. Also, even though the trial court erred in not granting an in camera review pursuant to § 27-510(3)(b), under the facts and circumstances of this case, the error was harmless beyond a reasonable doubt. Furthermore, the trial court did not err by refusing to give Lomack's proposed jury instruction, since Lomack failed to show that he was prejudiced by the refusal and the instructions as given properly advised the jury of the law. Finally, because the State substantially complied with the habitual criminal statutes in showing his commitment on a prior conviction, the trial court did not err in finding that Lomack was a habitual criminal. We therefore affirm the decision of the district court.

AFFIRMED.