Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
07/02/2019 09:07 AM CDT

State of Nebraska, appellee, v.
Marlon Franco, appellant.
___ N.W.2d ___

Filed June 25, 2019.    No. A-18-208.

1. **Statutes.** Statutory interpretation presents a question of law.
2. **Judgments: Appeal and Error.** An appellate court independently reviews questions of law decided by a lower court.
3. **Convictions: Evidence: Appeal and Error.** In reviewing a criminal conviction for a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.
4. **Convictions: Corroboration: Witnesses: Testimony: Controlled Substances.** Under the Uniform Controlled Substances Act, corroboration is sufficient to satisfy the requirement that a conviction not be based solely upon uncorroborated testimony of an individual cooperating with the prosecution if the witness' testimony is corroborated as to material facts and circumstances which tend to support the testimony as to the principal fact in issue.
5. **Criminal Law: Corroboration: Testimony.** Testimony of a cooperating individual need not be corroborated on every element of a crime.
6. **Controlled Substances.** A person possesses a controlled substance when he or she knows of the nature or character of the substance and of its presence and has dominion or control over it.
7. **Controlled Substances: Evidence: Circumstantial Evidence: Proof.** Possession can be either actual or constructive, and constructive possession of an illegal substance may be proved by direct or circumstantial evidence.

8. **Controlled Substances: Circumstantial Evidence: Intent.**
Circumstantial evidence may support a finding that a defendant intended
to distribute, deliver, or dispense a controlled substance in the defend-
ant's possession.

9. \_\_\_\_: \_\_\_\_: \_\_\_\_. Circumstantial evidence sufficient to establish pos-
session of a controlled substance with intent to deliver may consist of
evidence of the quantity of the substance, equipment and supplies found
with the substance, the place where the substance was found, the manner
of packaging, and the testimony of witnesses experienced and knowl-
edgeable in the field.

Appeal from the District Court for Lancaster County: Robert
R. Otte, Judge. Affirmed.

Justin B. Kalemkiarian, of Berry Law Firm, for appellant.

Douglas J. Peterson, Attorney General, and Erin E. Tangeman
for appellee.

Riedmann, Arterburn, and Welch, Judges.

Arterburn, Judge.

INTRODUCTION

Marlon Franco appeals from a conviction, pursuant to jury
verdict, for possession of methamphetamine with the intent to
deliver in violation of Neb. Rev. Stat. § 28-416(1) (Reissue
2016). On appeal, Franco alleges that a cooperating indi-
vidual's testimony was not sufficiently corroborated and that
the jury verdict rested on insufficient evidence. We reject
these arguments for the following reasons and, thus, affirm
Franco's conviction.

BACKGROUND

On March 27, 2017, Undreia Martinez' probation officer,
Avidan Perez, directed Martinez to report for drug testing.
Martinez was on probation at the time due to a conviction for
the unauthorized use of a financial transaction device. She
tested positive for methamphetamine on March 27 and admit-
ted her drug use to Perez. Pursuant to Martinez' probation

order, her residence was subject to search, and Perez informed her that he would search her home following the positive drug test.

Because probation officers do not carry firearms, police officers often assist in searching homes, particularly when a probation officer anticipates the presence of drugs or weapons. Martinez admitted to Perez that there were drugs present in her home. Martinez also told Perez that three individuals were present in the home: Dylan Siefker, Jeremy Cushing, and Yolanda Reyes. Perez asked a second probation officer, Jaime Evans, and two police officers to assist in the search. They gathered in a nearby parking lot to formulate a plan before entering Martinez' home. Perez directed Martinez, who was also present, to remain in the parking lot during the search.

Perez led Evans and the police officers to Martinez' residence, where two men, later identified as Siefker and Cushing, were standing outside smoking. Perez ran into the home in order to preserve its condition. As he entered, he saw Reyes near the door moving toward him and a man, later identified as Franco, sitting on the couch. Perez asked Reyes and Franco to step outside. Perez noted Franco's confused facial expression until Reyes conveyed the message to him in Spanish. Perez said that he did not see anything in Franco's hands and that Reyes was carrying only a cell phone. Perez also said he did not observe any suspected drugs on the couch at that point.

A few seconds after Perez entered the home, Reyes and Franco exited, and then Evans joined Perez inside. Evans began searching the main level of Martinez' home while Perez searched the second floor. In one room upstairs, Perez found marijuana; a folded dollar bill with white residue, which he believed to be methamphetamine; and three scales. In the other room upstairs, Perez found "a glass pipe with residue in it [and] a syringe with a needle and a spoon." Meanwhile, Evans found a black zippered bag, smaller than a purse, that was lying on the couch. Inside the black zippered bag was a

plastic Ziploc bag, with green coloring at the top, that contained methamphetamine. Martinez later testified that although she had plastic baggies in her home, they had neither the Ziploc seal nor the green coloring at the top. Evans said that the black zippered bag, with the Ziploc bag inside that contained methamphetamine, was on a couch cushion rather than "in the crack in between the . . . cushions." The Ziploc bag of methamphetamine contained large "shards," not salt-like crystalline. One of the police officers described the Ziploc bag of methamphetamine as "a lot larger than what [he] was used to seeing" as a street officer.

Franco was thereafter arrested and charged by criminal complaint on March 29, 2017, with the crime of possessing 10 to 27 grams of methamphetamine with the intent to deliver. A probable cause affidavit filed in the case noted that the Ziploc bag of methamphetamine seized from the couch at Martinez' home where Franco was sitting contained 25 grams of methamphetamine. It also noted that Franco had $230 cash on his person when he was arrested.

A jury trial was held from December 11 to 15, 2017. The State introduced numerous exhibits and offered testimony from 11 witnesses: probation officers Perez and Evans; Martinez; Siefker and Cushing, who were present outside Martinez' home; Rhiannon Rojas; and five police officers. Franco offered no evidence. In addition to the foregoing evidence, the following evidence was adduced by the State.

Martinez testified that she had used methamphetamine during the past 10 years, stopped using methamphetamine before she gave birth to her son, and then relapsed. In March 2017, Martinez allowed her friend Reyes to move into her home and place property in a spare second-floor bedroom. Reyes began providing methamphetamine to Martinez. In the days leading up to Martinez' testing positive for methamphetamine and the probation and police officers' searching her home on March 27, Martinez and Reyes obtained methamphetamine from Franco.

On Friday, March 24, 2017, Martinez met Franco for the first time when she and Reyes went to his trailer home to get methamphetamine. Martinez testified that although she was under the influence of both alcohol and methamphetamine that night, she observed Franco give Reyes methamphetamine in exchange for cash. Martinez testified that Franco and Reyes spoke in Spanish, which she does not speak. Early in the morning on Sunday, March 26, Martinez and Reyes again went to Franco's trailer home and smoked methamphetamine with Franco, supplied by him.

Rojas, who lived in the same trailer home as Franco, also received methamphetamine from him during February and March 2017. Rojas testified that she observed Franco store methamphetamine in Ziploc bags that were colored green at the top. She also testified that she knew Franco owned a black zippered bag, like a fanny pack, in which he sometimes stored his cell phone and cash but said that she never saw him keep methamphetamine in it. Rojas said that in the past, she had seen Franco with large quantities of methamphetamine, including amounts up to a half pound.

Siefker testified that he did not see Franco or anyone with methamphetamine at Martinez' home on March 27, 2017. He also said he did not see a black bag on the couch. Cushing similarly testified that he did not see any methamphetamine at Martinez' home on March 27.

A police officer who interviewed Franco testified that Franco denied any knowledge of the methamphetamine that was found on Martinez' couch. Franco told the officer that he was at Martinez' home to give a woman money for a hotel. Another police officer testified that he tested the Ziploc bag of methamphetamine for fingerprints, which yielded no result. He said that he only finds fingerprints on plastic bags approximately 10 percent of the time. Another police officer with expertise of methamphetamine testified that the 23-gram package found at Martinez' home would yield 115 individual doses, because there are five doses per gram.

The jury found Franco guilty of possession of methamphetamine with the intent to deliver, and the court entered judgment accordingly. The court thereafter sentenced Franco to 4 to 10 years' imprisonment with credit for 302 days' time served.

Franco now appeals.

## ASSIGNMENTS OF ERROR

On appeal, Franco argues generally that the evidence was insufficient to support the jury's verdict. He also specifically argues that Martinez was a cooperating individual whose testimony was not corroborated as required by Neb. Rev. Stat. § 28-1439.01 (Reissue 2016).

## STANDARD OF REVIEW

[1,2] Statutory interpretation presents a question of law. *In re Trust of Shire*, 299 Neb. 25, 907 N.W.2d 263 (2018). We independently review questions of law decided by a lower court. *Id*.

[3] In reviewing a criminal conviction for a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. *State v. Garcia*, 302 Neb. 406, 923 N.W.2d 725 (2019). The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id*.

## ANALYSIS

*Corroboration of Cooperating Individual.*

Franco argues that Martinez was a cooperating individual under § 28-1439.01 and that her testimony was not sufficiently corroborated as the statute requires. The State argues in response that Martinez was not a cooperating individual. We find that Martinez was not a cooperating individual under the

relevant statute, and therefore, her testimony was not subject to the statute's corroboration requirement.

[4,5] Nebraska law provides, "No conviction for an offense punishable under any provision of the Uniform Controlled Substances Act shall be based solely upon the uncorroborated testimony of a cooperating individual." § 28-1439.01. Under the Uniform Controlled Substances Act, corroboration is sufficient to satisfy the requirement that a conviction not be based solely upon uncorroborated testimony of an individual cooperating with the prosecution if the witness' testimony is corroborated as to material facts and circumstances which tend to support the testimony as to the principal fact in issue. *State v. Savage*, 301 Neb. 873, 920 N.W.2d 692 (2018), *modified on denial of rehearing* 302 Neb. 492, 924 N.W.2d 64 (2019). Testimony of a cooperating individual need not be corroborated on every element of a crime. *Id*.

For § 28-1439.01 to apply, however, the person testifying must be a "cooperating individual." Neb. Rev. Stat. § 28-401(26) (Reissue 2016) provides, "Cooperating individual means any person, other than a commissioned law enforcement officer, who acts on behalf of, at the request of, or as agent for a law enforcement agency for the purpose of gathering or obtaining evidence of offenses punishable under the Uniform Controlled Substances Act." Our review of pertinent case law reveals cases which discuss whether, under the facts of each case, a cooperating individual's testimony was adequately corroborated, but none which make a specific determination as to whether a particular witness meets the definition of a cooperating individual. The question in this case is whether Martinez acted on behalf of, at the request of, or as an agent for law enforcement for the purpose of gathering or obtaining evidence against Franco.

We find that Martinez was not a cooperating individual. First, we note that it seems axiomatic that a cooperating individual must perform a function greater than simply providing information to law enforcement regarding events that she has

observed in the past. Cooperating individuals also often participate in some sort of quid pro quo agreement whereby investigators receive assistance from the individual in exchange for providing to the individual some benefit.

This quid pro quo arrangement between investigators and cooperating individuals is well established in our case law. For example, in *State v. Palser*, 238 Neb. 193, 469 N.W.2d 753 (1991), the arrangement was made explicit. To induce an individual to cooperate in a controlled drug buy, officers explained to the cooperating individual that he "had the option of cooperating with the prosecuting authorities or a criminal complaint might be filed against him" for his participation in past drug purchases. *Id*. at 197, 469 N.W.2d at 757.

Similarly, in *State v. Jimenez*, 248 Neb. 255, 533 N.W.2d 913 (1995), an individual cooperated with investigators in exchange for a reduced charge. In *Jimenez*, the court noted that corroboration may be supplied by observation of the cooperating individual's meeting with the target of the investigation and searching the cooperating individual before and after the purchase of controlled substances. These are common occurrences in cases involving cooperating individuals, which connote active evidence gathering on the part of the cooperator. See, also, *State v. Kuta*, 12 Neb. App. 847, 686 N.W.2d 374 (2004).

In *State v. Johnson*, 261 Neb. 1001, 627 N.W.2d 753 (2001), a drug task force monetarily compensated a cooperating individual who participated in controlled drug transactions. Investigators gave that cooperating individual "'buy money'" prior to the drug transaction and also searched him both before and after the transaction. *Id*. at 1004, 627 N.W.2d at 757. Additionally, investigators outfitted the cooperating individual with a transmitter disguised as a pager. *Id*.

While dismissal or reduction of charges and/or compensation are commonly found in cases involving cooperating individuals, these factors are not required. What is required is that the cooperating individual "acts on behalf of, at the

request of, or as an agent for a law enforcement agency." See § 28-401(26). This definition requires that the individual take some action in response to law enforcement's request. Finally, the definition requires that the act requested be "for the purpose of gathering or obtaining evidence." See *id*. In our view, this definition indicates that this "gathering" takes place in response to law enforcement's request for the cooperator to "act[]." It does not mean that a person who merely provides information regarding a crime he or she has observed is transformed thereby into a cooperating individual.

In the present case, Martinez is not a "cooperating individual" under § 28-1439.01. First, we note that it is highly questionable whether her probation officer would qualify as a "law enforcement agency" under § 28-401(26). However, even assuming that the probation officer coupled with the police department's later involvement qualifies, Martinez' active cooperation, to the extent that it existed at all, was providing Perez a key to her home and informing him of its contents and occupants. But Perez was entitled to search Martinez' home at any time. Martinez' provision of a key to her home was required under her probation order, and informing Perez of what he may encounter when he entered the home does not connote the type of active evidence gathering found in the statutory definition. Here, ascertaining Martinez' compliance with her probation order was the purpose of searching her home, not collecting evidence of crimes under the Uniform Controlled Substances Act. Moreover, there is no evidence that Martinez was offered any leniency or other incentive to provide information to Perez or to the police department or to testify at trial. In fact, Martinez was sanctioned for her probation violation and later was sentenced to jail. Martinez' actions in this case exhibited none of the paradigmatic qualities of a "[c]ooperating individual" as defined by § 28-401(26) or pertinent case law.

Because Martinez did not act as a cooperating individual under § 28-1439.01, her trial testimony was not subject to

the statute's corroboration requirement. We therefore need not consider whether, and to what extent, Martinez' testimony was corroborated by other sources.

*Sufficiency of Evidence.*

Franco was convicted of possession of methamphetamine with the intent to deliver in violation of § 28-416(1). However, Franco contends that his conviction was based on insufficient evidence of possession of methamphetamine with the intent to deliver. We find that the jury's finding of Franco's guilt was supported by sufficient evidence.

[6-8] A person possesses a controlled substance when he or she knows of the nature or character of the substance and of its presence and has dominion or control over it. *State v. Rocha*, 295 Neb. 716, 890 N.W.2d 178 (2017). Possession can be either actual or constructive, and constructive possession of an illegal substance may be proved by direct or circumstantial evidence. *Id*. Circumstantial evidence may also support a finding that a defendant intended to distribute, deliver, or dispense a controlled substance in the defendant's possession. *State v. Howard*, 282 Neb. 352, 803 N.W.2d 450 (2011). Circumstantial evidence sufficient to establish possession of a controlled substance with intent to deliver may consist of evidence of the quantity of the substance, equipment and supplies found with the substance, the place where the substance was found, the manner of packaging, and the testimony of witnesses experienced and knowledgeable in the field. *Id*.

Taken in the light most favorable to the State, the evidence produced at trial showed that Franco had a history of distributing methamphetamine to others. Both Rojas and Martinez testified that they personally had received methamphetamine from Franco in March 2017. Moreover, Martinez testified that she observed Reyes provide cash to Franco in exchange for methamphetamine on the evening of March 24.

The evidence also showed that Franco owned a black zippered bag like the one containing methamphetamine that

Evans found on Martinez' couch. Rojas testified that she knew Franco owned a black zippered bag that was smaller than the size of a purse, although she said that she did not know Franco to store methamphetamine inside it. Rojas also testified that she had observed Franco with methamphetamine in a Ziploc bag that had green coloring at the top, which comports with the Ziploc bag of methamphetamine found inside the black zippered bag on Martinez' couch. Moreover, Franco had been sitting on Martinez' couch immediately before Evans found the black zippered bag, which she said was sitting on top of the couch and not "in the crack in between the . . . cushions." A police officer testified that the quantity of methamphetamine found in the Ziploc bag was consistent with an intent to deliver given the quantity contained therein.

Franco contends that the evidence does not support the verdict because the methamphetamine was found in the home of a known methamphetamine user who had other drug paraphernalia in her home and was on probation at the time. Nevertheless, the evidence in this case, when taken in a light most favorable to the State, was sufficient to support the jury's finding Franco guilty of possession of methamphetamine with the intent to deliver. Thus, we affirm the judgment entered by the district court.

## CONCLUSION

We find that the corroboration requirement of § 28-1439.01 was inapplicable to the testimony of Martinez, because she was not a cooperating individual as defined by § 28-401(26). We further find that there was sufficient evidence to support the verdict finding Franco guilty of possession of methamphetamine with the intent to deliver.

AFFIRMED.